IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00023-NRN

**LANCE GREEN** and
**ANDERSON KHALID**, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

**PERRY'S RESTAURANTS LTD**;
**PERRY'S STEAKHOUSE OF COLORADO, LLC**, collectively d/b/a **PERRY'S STEAKHOUSE AND GRILLE**; and
**CHRISTOPHER V. PERRY**, individually,

*Defendants.*

---

FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

---

Plaintiffs, Lance Green and Anderson Khalid, individually and on behalf of all others similarly situated, file this *First Amended Class Action and Collective Action Complaint* against Perry's Restaurants LTD and Perry's Steakhouse of Colorado, LLC (collectively, "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, as amended ("FLSA") and the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq.* ("CWCA") and Colorado Overtime and Minimum Pay Standards Order (COMPS ORDER) #36, 7 CCR 1103-1 (together, "Colorado Wage Laws").

#### PRELIMINARY STATEMENT OF FACTS

1.      This is a class and collective action brought by Plaintiffs on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23 and under 29 U.S.C. § 216(b). The putative class and collective members are all individuals employed by Defendants as

servers in Colorado, Alabama, North Carolina, or Florida, and who were paid a direct cash subminimum hourly wage.[1]

2.      Plaintiffs and the other similarly situated individuals they seek to represent are current and former servers, who are tipped employees under the FLSA and Colorado Wage Laws.

**A.   FLSA Collective Action brought under 29 U.S.C. § 216(b).**

3.      In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living.[2] The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as well as "underpay."' *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981).

4.      Section 206 of the FLSA requires employers to compensate employees at a rate of not less than the minimum wage. *See* 29 U.S.C. § 206(a). However, for tipped employees,

---

[1] Though Perry's also has locations in Illinois and Texas, there is pending litigation in Texas and Illinois involving Defendants' servers who worked at Defendants' restaurants located in Texas and Illinois. *See* Collective Action Complaint at p. 4 ¶ 10, *Helgason v. Perry's Steakhouse & Grille*, No. 3:20-cv-01573-S (N.D. Tex. filed June 12, 2020), ECF No. 1 at p. 4 ¶ 10 (seeking FLSA collective of "all individuals who worked as servers for Defendants *in Texas* at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.")(emphasis added); *see also Rendak v. Perry's Steakhouse of Ill., LLC*, No. 1:14-cv-08543, 2020 U.S. Dist. LEXIS 182095, at *1 (N.D. Ill. 2020) (certifying class and collective action of Perry's servers "who worked as table servers at Perry's Steakhouse and Grille in Oak Brook, **Illinois**") (emphasis added).

[2] *See Martinez v. Behring's Bearings Service, Inc*., 501 F.2d 104, 107 (5th Cir. 1974) ("[t]here can be no doubt that the purpose of the FLSA was and is to protect interstate employees by denying their employers the tool of toying with workers' wages when battling in the competitive market."); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162, 183 L. Ed. 2d 153 (2012) ("Congress enacted the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and oppressive working hours."); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n.18, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) ("[t]he 'prime purpose' in enacting the FLSA 'was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.").

employers may take a "tip credit" against payment of the full minimum wage, using a portion of an employee's tips to satisfy the employer's minimum wage obligations to the employee. *See* 29 U.S.C. § 203(m). The use of the tip credit results in a huge savings to employers who, by utilizing the tip credit, are relieved of their obligation to pay the full minimum wage and can pay employees as little as $2.13 per hour plus tips.

5.      Though, "Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips." *Chung v. New Silver Palace Restaurant, Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002)). In utilizing the tip credit defense, the FLSA specifically sets forth two conditions that an employer[3] must satisfy: 1) the employer must inform the employee that it will take a tip credit; and 2) the employer must allow its tipped employees to retain all the tips they receive, except those tips included in a lawfully administered tip pool. *Id.*

6.      "What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) . . . you may obtain a . . . credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, [the employer] gets no credit." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 681 (D. Md. 2012) (quoting, *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977).

7.      Here, Defendants have a policy and practice of paying all of their employee servers, including Plaintiffs, subminimum hourly wages under the tip credit provisions of the FLSA. However, Defendants have failed to comply with the requirements of Section 203(m)—an

---

[3] *See Porter v. West Side Rest., LLC,* 2014 U.S. Dist. LEXIS 57126, *23 (D. Kan. 2014) (citing *Garcia v. Palomino,* 738 F. Supp. 2d 1171, 1177 n.34 (D. Kan. 2010) ("[d]efendants bear the burden of proving that they are entitled to take the tip credit."); *see also Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010).

affirmative defense—because Defendants (1) failed to allow Plaintiffs and the FLSA Collective members to retain all of their tips;[4] (2) failed to fully redistribute Plaintiffs and the FLSA Collective members' tips from the tip pool solely among other customarily and regularly tipped employees; (3) failed to allow Plaintiffs and the FLSA Collective members to retain all of their tips because it required Plaintiffs and the FLSA Collective members to purchase various items and incur other business expenses; (4) paid subminimum wages to Plaintiffs and the FLSA Collective members to perform non-tipped work *unrelated* to Plaintiffs' and the FLSA Collective members' tipped occupation (i.e., "dual jobs"); and (5) paid subminimum wages to Plaintiffs and the FLSA Collective members to perform non-tipped work that, although related to Plaintiffs' and the FLSA Collective members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.

8.    Defendants' illegal practices in violation of the FLSA have resulted in a forfeiture of the "tip credit." Consequently, as a result of any one or more violations of the FLSA's tip credit, an affirmative defense, Defendants are liable to Plaintiffs and the FLSA Collective members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages provided for under the FLSA.

9.    Because there are other putative plaintiffs who are similarly situated to Plaintiffs with regard to work performed and Defendants' compensation policies, Plaintiffs bring this action as a collective action under section 216(b) of the FLSA to recover unpaid wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of themselves and all others similarly situated who file consents to join this action.

**B.    Class Action brought under the Colorado Wage Laws.**

---

[4] The term "tip" as used in this Complaint shall mean and carry the definition assigned to it under 29 C.F.R. § 531.52.

10.    The Colorado Wage Claim Act, originally enacted in 1901 and last amended in 2019, "assure[s] timely payment of wages and provid[es] adequate judicial relief when wages are not paid." *Cusimano v. Metro Auto, Inc.*, 860 P.2d 532, 534 (Colo. App. 1992) (citing *Hoefer v. Polly Little Realtors, Inc.*, 543 P.2d 114 (Colo. App. 1975)). Moreover, the Colorado Overtime and Minimum Pay Standards Order[5] supplements the requirements as mandated in the FLSA to provide greater protection to employees and to set a higher standard for employers. *See*, 7 CCR 1103-1; *see also* 29 U.S.C. § 218(a) ("[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter."); *Idowu v. Nesbitt*, 2014 COA 97, ¶ 51 (Colo. App. 2014) ("[t]he FLSA establishes the minimum wage and hour requirements with which employers must comply. Nothing in the FLSA prevents states from providing employees with additional benefits in these areas.") (citing *Barefield v. Vill of Winnetka*, 81 F.3d 704, 711 (7th Cir. 1996) ("[t]he FLSA sets a floor, not a ceiling, on compensation that employees must receive."); *Beltran v. InterExchange, Inc.*, 2018 U.S. Dist. LEXIS 131621, *6 (D. Colo. 2018) ("the FLSA mandates that state minimum wage laws control within each respective state").

11.    As of January 1, 2020, COMPS ORDER #36 requires that "all employees… shall be paid not less than $12.00 per hour, less any applicable lawful credits or exceptions noted, for all hours worked." *See* 7 CCR 1103-1-3. Similar to the FLSA, COMPS ORDER #36 allows employers to take a "tip credit" towards the minimum wage. *See* 7 CCR 1103-1-6. However, the allowable tip credit under COMPS ORDER #36 must be no greater than $3.02 per hour. *Id.* Thus,

---

[5] The Colorado Overtime and Minimum Pay Standards Order #36 is issued under the authority of, and as enforcement of, the Colorado Wage Claim Act.

employers in the state of Colorado may pay their tipped employees as little $8.98 per hour, plus tips. *Id.*

12.     The CWCA specifies that "it is unlawful for an employer engaged in a business where custom prevails of giving of gratuities by patrons to an employee of the business to assert a claim to, or right of ownership in, or control over gratuities." C.R.S. § 8-4-103(6). In asserting the tip credit towards the minimum wage, COMPS ORDER #36 sets forth two conditions that will nullify allowable tip credits: 1) employer-required sharing of tips with employees who do not customarily and regularly receive tips, or 2) deduction of credit card processing fees from tipped employees. *See* 7 CCR 1103-1-1.

13.     Here, Defendants have a policy and practice of paying all of their Colorado servers, including Plaintiff Khalid, a subminimum hourly wage of $8.98 per hour under the tip credit provisions in COMPS ORDER #36. However, Defendants nullified their allowable use of the tip credit because Defendants regularly failed to allow Plaintiff Khalid and the Colorado Class members to retain all their tips by requiring the sharing of tips with employees who do not customarily and regularly receive tips.

14.     Defendants illegal practices in violation of CWCA and COMPS ORDER #36 has nullified any allowable use of the tip credit. Thus, Plaintiff Khalid and the Colorado Class members are entitled to recover the balance owed of the full minimum wage for every hour worked, as well as reasonable attorney fees and court costs.

15.     Because there are other class members whose claims are typical to those claims asserted by Plaintiff Khalid with regard to work performed and Defendants' compensation practices and policies, Plaintiff Khalid brings this action as a class action under Federal Rule of

Civil Procedure 23, to recover unpaid wages, misappropriated tips, attorneys' fees, court costs, and post-judgment interest on behalf of himself and the Colorado Class members.

## PARTIES

16.     Plaintiff, Lance Green, is an individual and resident of Alabama. Plaintiff was employed by Defendants as a server within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of consent filed with the Court.

17.     Plaintiff, Anderson Khalid, is an individual and resident of Colorado. Plaintiff was employed by Defendants as a server within the three-year period preceding the filing of this lawsuit. At all relevant times mentioned, Plaintiff was an "employee" of Defendants as defined by the FLSA and Colorado Wage Laws. Plaintiff has consented to be a party-plaintiff to this action as indicated by the notice of consent filed with the Court.

18.     The Putative Collective Members (the "FLSA Collective") are all individuals who worked as servers at any one or more of Defendants' restaurants located  in Colorado, Alabama, North Carolina, or Florida [6]  at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage. The "FLSA Collective" members will "opt in" pursuant to Section 216(b) of the FLSA by filing a consent to become a party-plaintiff. *See* 29 U.S.C. § 216(b). "FLSA Collective" members include all individuals who file a consent to join this lawsuit.

---

[6] There is a pending lawsuit in Texas seeking collective treatment of Defendants' servers who worked at any of Defendants' restaurants located in Texas. *See Helgason v. Perry's Steakhouse & Grille*, No. 3:20-cv-01573-E (N.D. Tex. filed June 12, 2020). There is also a pending lawsuit in Illinois in which a class and collective action was certified for Defendants' servers who worked at the Perry's Steakhouse & Grille in Oak Brook, Illinois. *See Rendak v. Perry's Steakhouse of Ill., LLC.,* No. 1:14-cv-08543 (N.D. Ill. 2014).

19.     At all times hereinafter mentioned, Plaintiffs and Collective Members were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206, 207.

20.     The Class Members (the "Colorado Class") are all individuals who worked as servers at Defendants' restaurant location in Lone Tree, Colorado[7] at any time during the three (3) year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage. The "Colorado Class" members will include all individuals who worked as servers for Defendants at their Lone Tree, Colorado location and who do not file a notice opting out of this action.

21.     At all times hereinafter mentioned, Plaintiffs and Colorado Class members were individual employees of Defendants as defined by Colorado Wage Laws. *See* C.R.S. § 8-4-101(5); 7 CRR 1103-1-1.

22.     Defendant Perry's Restaurant, LTD, is a limited partnership formed under the laws of Texas and doing business as Perry's Steakhouse and Grille. Defendant operates a chain of fine dining restaurants commonly known as Perry's Steakhouse and Grille with locations in Texas, Alabama, Colorado, Florida, Illinois, North Carolina, and Tennessee[8]. Defendant, Perry's Restaurant, LTD, also acts as the corporate headquarters (or parent company) for the Perry's Steakhouse & Grille subsidiary companies (i.e. Perry's Steakhouse of Colorado, LLC).

---

[7]  *See* PERRY'S STEAKHOUSE & GRILLE, Locations, https://perryssteakhouse.com/locations/ (last visited Dec. 15, 2020) ("8433 Park Meadows Center Drive, Lone Tree, CO 80124").

[8]  *See* PERRY'S STEAKHOUSE & GRILLE, Locations, https://perryssteakhouse.com/locations/ (last visited Dec. 15, 2020)

23.     Defendant Perry's Steakhouse of Colorado, LLC, is a limited liability company formed under the laws of Colorado and doing business as Perry's Steakhouse and Grille. Defendant operates the Perry's Steakhouse and Grille restaurant located in Lone Tree, Colorado.

### JURISDICTION AND VENUE

24.     This Court has subject-matter jurisdiction over this matter because a substantial portion of the claims in this suit arise under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* Therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

25.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* ("CWCA") and Colorado Overtime and Minimum Pay Standards Order (COMPS ORDER) #36, 7 CCR 1103-1 claims, because these non-federal claims arise from a common nucleus of operative facts such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.

26.     This Court has personal jurisdiction over Defendant Perry's Steakhouse of Colorado, LLC because Defendant is domiciled in and doing business in this District.

27.     Moreover, this Court has personal jurisdiction over Defendants Perry's Restaurants, LTD because it has purposely availed itself of the benefits and protections of this District and has a substantial business presence in this District. Specifically, Perry's Restaurants, LTD controls and oversees the operation of the Perry's Steakhouse and Grille located within this District.[9]

---

[9] For example, Perry's Restaurants, LTD controls and makes decisions directly related to Perry's employees in Colorado and compensation policies, including decisions regarding the administration and discontinuation of policies relating to the payment of servers' tips, tip pool and tip sharing, and payroll processes. Perry's Restaurants, LTD also created and enforces the employee handbook and polices, and oversees and manages accounting and payroll processing in Colorado. Furthermore, Perry's Restaurants, LTD provides all online and website services, including applications for employment and the online portal

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because at all times relevant to the matters set forth in this Complaint, Defendants were and are operating afine dining restaurant location in Lone Tree, Colorado. In addition, a substantial part of the events and omissions giving rise to the claims alleged in this Complaint occurred within this District.

### COVERAGE

29.     At all relevant times, Defendants have each been an "employer" or are "joint employers" of Plaintiffs and the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and each have been an "employer" or are "joint employers" of Plaintiff Khalid and the Colorado Class members within the meaning of the Colorado Wage Laws, specifically C.R.S. § 8-4-101(6) and 7 CCR 1103-1-1. For instance, Defendants operate each of their fine dining restaurant chain locations from their headquarters in Houston, Texas; send paychecks from their headquarters in Houston to Plaintiffs, the FLSA Collective members, and the Colorado Class members; use the same website to solicit and provide information for *all* of their restaurant locations; transfer their server employees between their multiple restaurant locations; and use similar employment practices and adhere to similar employment polices across their restaurant locations, as well as use similar or identical concepts, menus, and side work charts at all locations.

30.     At all relevant times, Defendants have acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs and the FLSA Collective members and with respect to Plaintiff Khalid and the Colorado Class members.

---

for employment applications provided on the website. The online and website services provided by Perry's Restaurants, LTD is the sole website used by all Perry's Steakhouse & Grille locations (including the Perry's Steakhouse & Grille located within this District) for information regarding each location.

31.     At all relevant times, Defendants have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been engaged in the performance of related activities for a common business purpose—namely, operating a fine dining restaurant called Perry's Steakhouse and Grille where Plaintiffs and the FLSA Collective members were employed to work at one or more locations.

32.     At all relevant times, Defendants have each individually and collectively been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had (a) employees engaged in commerce or in the production of goods for commerce, or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

33.     At all relevant times, Plaintiffs and the FLSA Collective members were individual "employees" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) of Defendants who are engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 326-29 (5th Cir. 1993); *see also Reagor v. Okmulgee County Family Res. Ctr., Inc.,* 501 Fed. Appx. 805, 808-9 (10th Cir. 2012). Specifically, as part of their employment, Plaintiffs and the FLSA Collective members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. In addition, while employed by Defendants to work as servers at its restaurants, Plaintiffs and the FLSA Collective members served customers who were traveling from out-of-state or across interstate lines. Finally, Plaintiffs and the FLSA Collective members

regularly and frequently processed interstate credit card transactions during every shift they worked.

34.     At all relevant times, Plaintiff Khalid and the Colorado Class members constituted individual employees employed by an employer as the term "employee" is defined under C.R.S. § 8-4-101(5) and 7 CCR 1103-1-1 ("[e]mployee means any person, including a migratory laborer, performing labor or services for the benefit of an employer"). While working as servers at Defendants' Colorado restaurant location, Plaintiff Khalid and the Colorado Class members provided services for the benefit of Defendants.

FACTUAL ALLEGATIONS

**Factual Allegations Relating to FLSA Violations**

35.      From approximately July 2018 until October 2019, Defendants employed Plaintiff Lance Green as a server to work at Defendants' restaurant located at 4 Perimeter Park South, Birmingham, Alabama 35243. During his employment, Defendants paid Plaintiff Green a subminimum hourly wage plus tips.

36.     From approximately February 2017 until on or about January 2021, Defendants employed Plaintiff Anderson Khalid as a server to work at Defendants' restaurant located at 8433 Park Meadows Center Drive, Lone Tree, Colorado 80124. Throughout his employment, Defendants paid Plaintiff Khalid a subminimum hourly wage plus tips.

37.     Defendants employed Plaintiffs and other individuals as servers within the three (3) year period preceding the filing of this lawsuit and paid them all a subminimum wage per hour prior to accounting for the receipt of earned tips.

38.     At all times relevant, Plaintiffs and the FLSA Collective were Defendants' "employees" as that term is defined by the FLSA and relevant case law. *See e.g.*, *Reich*, 998 F.2d at 327; *Reagor,* 501 Fed. Appx. at 808-9.

39.     As part of the payment scheme Defendants used to compensate Plaintiffs and the FLSA Collective, Defendants paid Plaintiffs and the FLSA Collective members a subminimum hourly wage while purportedly utilizing the tip credit as a defense to Defendants' obligation to pay the full minimum wage.

40.     The use of the tip credit results in huge savings to Defendants because Defendants compensate Plaintiffs and the FLSA Collective at a significantly reduced subminimum hourly wage—with customers bearing the large burden of compensating Plaintiffs and the FLSA Collective with tips.

41.     Defendants imposed a tip credit upon all their tipped employees, including Plaintiffs and the FLSA Collective.

42.     For instance, during the three-year period preceding the filing of this lawsuit, Defendants employed Plaintiff Green as a server and paid him $2.13 per hour prior to accounting for the receipt of earned tips. Defendants then purported to rely on the tips Plaintiff Green earned by applying the maximum tip credit under federal law of $5.12 per hour to offset Plaintiff Green's subminimum hourly wage and bring his effective rate of pay, with tips included, up to the required federal minimum wage of $7.25 per hour.

43.     Additionally, Defendants employed Plaintiff Khalid as a server and paid him under a tip credit payment scheme. For example, for the 2020 calendar year Defendants paid Plaintiff Khalid a subminimum hourly wage under Colorado Wage Laws of $8.98 per hour. Defendants then took the maximum tip credit under Colorado Wage Laws of $3.02 per hour to offset Plaintiff

Khalid's subminimum hourly wage and bring his effective rate of pay, with tips included, up to the required Colorado state minimum wage of $12.00 per hour.

44.     Plaintiffs and the FLSA Collective have been victimized by Defendants' payment scheme that violates the FLSA. Specifically, Defendants violated Section 203(m), an affirmative defense, by (1) not allowing Plaintiffs and the FLSA Collective members to retain all of their tips; (2) requiring Plaintiffs and the FLSA Collective members to contribute a portion of their tips to an illegal tip pool; (3) requiring Plaintiffs and the FLSA Collective members to incur business expenses; (4) requiring Plaintiffs and the FLSA Collective members to perform non-tipped work *unrelated* to Plaintiffs and the FLSA Collective members' tipped occupation (i.e., "dual jobs"); and (5) requiring Plaintiffs and the FLSA Collective members to perform non-tipped work that, although related to Plaintiffs' and the FLSA Collective members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.

45.     Based upon any one or more of the foregoing, Defendants violated the tip credit provisions of the FLSA as cited in 29 U.S.C. § 203(m), and therefore, Defendants are prevented from utilizing the tip credit as an affirmative defense to the payment of the full minimum wage as required by Section 206 of the FLSA.

46.     Plaintiffs and the FLSA Collective members were always required to contribute the full 4.5% of their sales even during shifts when not all support positions were staffed.

47.     Defendants' pattern and practice of retaining tips from the tip pool for vacant positions results in Defendants' forfeiture of the tip credit. *See Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily

receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'")[10];
*See also* 29 U.S.C. § 203(m)(2)(B) ("[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.")

48.     In addition, Defendants retained portions of Plaintiffs and the FLSA Collective members' tips, including tips that Plaintiffs and the FLSA Collective members contributed to the tip pool. For instance, though a portion of the tips that Plaintiffs and the FLSA Collective members contributed to the tip pool are purportedly earmarked for the food runners and bussers (i.e. "server assistants"), the food runners and bussers do not receive the full amount of these tips. Instead, Defendants pay the server assistants a flat hourly wage, regardless of the amount of tips Plaintiffs and the FLSA Collective members contributed to the tip pool.

49.     Because Defendants did not fully redistribute all of Plaintiffs and the FLSA Collective members' tips from the tip pool solely among other customarily and regularly tipped employees, Defendants failed to adhere to *condition two* of 29 U.S.C. § 203(m), and have thus violated the minimum wage as cited in 29 U.S.C. § 206. Therefore, Defendants are disavowed from using the tip-credit as a defense to the payment of the full minimum wage.

50.     In addition, while utilizing the tip credit, Defendants required Plaintiffs and the FLSA Collective members to pay for various business expenses including pens, wine keys, pepper mills, crumbers (i.e. tool used to scrape and scoop bread crumbs off dining tables), and other tools.

51.     Defendants' pattern and practice of requiring Plaintiffs and the FLSA Collective members to incur these business expenses is also a retention of tips and further violates *condition two* of 29 U.S.C. § 203(m). *See e.g., Donovan v. Simmons Petrol. Corp.,* 725 F.2d 83, 84 (10th

---

[10] *See also Torres v. Cache Cache, Ltd.*, 2013 U.S. Dist. LEXIS 55687, *4-6 (D. Colo. 2013); (citing *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011).

Cir. 1983) (holding that an employer's deductions of "cash register shortages and the amount of uncollectible checks accepted by its employees from the paychecks of employees who were on duty when the shortages occurred" was a willful FLSA violation); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972) (holding that a general deduction for cash register shortages tends to "shift part of the employer's business expense to the employees" and is impermissible if the deduction cuts into the statutory minimum wage); *Reich v. Priba Corp*., 890 F. Supp. 586, 596 (N.D. Tex. 1995) ("[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expense of carrying on an enterprise."); 29 C.F.R. 531.3(d)(1), (2); 29 C.F.R. 531.32(c); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554-55 (6th Cir. 1999); *see also Herman v. Collis Foods, Inc.*, 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

52.     Defendants further violated the FLSA by enforcing a policy and practice of paying Plaintiffs and the FLSA Collective members a subminimum hourly wage even when they required Plaintiffs and the FLSA Collective members to perform non-tipped work that was *unrelated* to their tipped occupation (i.e., "dual jobs").

53.     For example, Defendants regularly and frequently required Plaintiffs and the FLSA Collective members to perform a number of non-tipped duties *unrelated* to their tipped occupations as servers, including but not limited to: polishing glasses, silverware, and plates; cleaning windows; setting up and taking down patio furniture; cleaning and stocking condiments, assisting in kitchen preparation and food preparation; setting up cocktail lounge; and setting up the bread stations.

54.     Defendants paid Plaintiffs and the FLSA Collective members a subminimum hourly wage for all hours Plaintiffs and the FLSA Collective members worked for Defendants,

including for their time spent performing duties that are *unrelated* to Plaintiffs and the FLSA Collective members' tipped occupations.

55.     In addition to performing duties *unrelated* to their jobs as servers, Defendants also regularly and frequently required Plaintiffs and the FLSA Collective members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to: wiping down tables, stocking and setting tables, running food, rolling silverware, and other "side-work." These nontipped duties related to Plaintiffs and the FLSA Collective members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek.

56.     Finally, Defendants' method of paying Plaintiffs and the FLSA Collective members in violation of the FLSA was not based on good-faith and a reasonable belief that its conduct complied with the FLSA. Therefore, an award of liquidated damages is mandatory.

57.     Defendants' method of paying Plaintiffs and the FLSA Collective members in violation of the FLSA was willful and was not based on good-faith or reasonable belief that its conduct complied with the FLSA. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. 29 U.S.C. § 255(a).

58.     During the three-year period prior to this suit, Defendants have employed individuals who performed similar job duties under a similar payment scheme as was used to compensate Plaintiffs. Because there are other putative plaintiffs who are similarly situated to Plaintiffs with regard to work performed and Defendants' compensation policies, Plaintiffs bring this action as a collective action under § 216(b) of the FLSA to recover unpaid wages, liquidated damages, attorneys' fees, and costs on behalf of himself and all others similarly situated.

**Factual Allegations Relating to Colorado Wage Law Violations**

59.     As described above, beginning in February of 2017, Plaintiff Khalid worked for Defendants at Defendants' restaurant location in Lone Tree, Colorado. Throughout Plaintiff

Khalid's employment, Defendants paid him a subminimum hourly rate, under Colorado Wage Laws, plus tips.

60.     Defendants employed Plaintiff Khalid and other individuals as servers within the three (3) year period proceeding the filing of this lawsuit and paid them all a subminimum hourly wage prior to accounting for the tips received from customers.

61.     At all times relevant, Plaintiff Khalid and the Colorado Class members were Defendants' "employees" as that term is defined by Colorado Wage Laws and relevant case law. *See* C.R.S. § 8-4-101(5); 7 CRR 1103-1-1; *see e.g. Reagor,* 501 Fed. Appx. at 808-9.

62.     In continuation of Defendants' payment scheme, Defendants paid Plaintiff Khalid and the Colorado Class members a subminimum hourly wage while purportedly utilizing the tip credit as a relief to Defendants' obligation to pay the full minimum wage as adopted by Colorado Wage Laws. Defendants continued to heavily rely on customer tips to bring Plaintiff Khalid and the Colorado Class members' pay up to the Colorado state minimum wage.

63.     Thus, Defendants imposed a tip credit upon all their tipped employees, including Plaintiff Khalid and the Colorado Class members.

64.     As described above, Plaintiff Khalid was employed by Defendants as a server and was paid a subminimum hourly wage pursuant to Colorado Wage Laws. For the 2020 calendar year, Defendants paid Plaintiff Khalid a subminimum hourly wage of $8.98 per hour, prior to accounting for the receipt of tips earned from Defendants' customers. Defendants then took the maximum tip credit of $3.02 per hour to offset Plaintiff Khalid's subminimum hourly wage and bring his effective rate of pay, with the receipt of customer tips, up to the required Colorado state minimum wage of $12.00.

65.     Prior to the 2020 calendar year, Defendants paid Plaintiff Khalid a subminimum hourly wage of $8.08, utilizing customer tips to bring his effective rate of pay up to the 2019 Colorado state minimum wage of $11.10. In 2018, Plaintiff Khalid was paid a subminimum wage of $7.18 before the accounting of tips from customers, which brought his effective rate of pay up to the 2018 Colorado state minimum wage of $10.20. In 2017, Plaintiff Khalid was paid a subminimum wage of $6.28, prior to the inclusion of customer tips, which brought his effective rate of pay up to the 2017 Colorado state minimum wage of $9.30.

66.     In addition to the FLSA's requirements, in utilizing the tip credit, Colorado Wage Law sets forth two (2) clear acts which nullify allowable tip credits: 1) employer-required sharing of tips with employees who do not customarily and regularly receive tips or 2) deduction of credit card processing fees from tipped employees. *See* 7 CCR 1103-1-1.

67.     Plaintiff Khalid and the Colorado Class members have been victimized by Defendants' payment scheme that violates the provisions of the tip credit as set forth under Colorado Wage Laws. Specifically, Defendants violated the tip credit by requiring Plaintiff Khalid and the Colorado Class members to share tips with employees who do not customarily and regularly receive tips.

68.     Thus, Defendants violated the provisions of the tip credit under Colorado Wage Law as stated under 7 CCR 1103-1 and have nullified their use of the tip credit towards the Colorado state minimum wage.

69.     Plaintiff Khalid and the Colorado Class were required to contribute tips to a tip pool at a rate of 4.5% of their sales each shift. Included in this tip pool were bartenders, service well bartenders, hosts, and server assistants (i.e. food runners and bussers). However, the bartender, service well bartender, host, and server assistant positions were all paid a flat hourly wage

regardless of the amount of tips that Plaintiff Khalid and the Colorado Class members contributed to the tip pool. Thus, Defendants retained portions of Plaintiff Khalid's and the Colorado Class members' tips in violation of Colorado Wage Laws.

70.     Defendants pattern and practice of retaining tips from the tip pool after compensating the hourly employees at a fixed rate results in nullification of Defendants' reliance on the tip credit defense. *See* 7 CRR 1103-1-1.

71.     Furthermore, the service well bartenders inclusion in the tip pool is a separate violation of Colorado Wage Laws. The service well (i.e. the bar in which service well bartenders were staffed) was located in the kitchen-area of the restaurant. The location of the service well did not allow for customers to order drinks directly from the service well and service well bartenders did not interact with customers. Furthermore, the service well bartenders were all paid a flat hourly rate greater than the minimum wage. Thus, the service well bartender position does not contain employees who customarily and regularly receive tips and therefore their inclusion in the tip pool is an additional violation of Colorado Wage Laws.

72.     Because Defendants did not fully distribute all of Plaintiff Khalid's and the Colorado Class members' tips from the tip pool solely among other customarily and regularly tipped employees, Defendants violated Colorado Wage Laws and nullified their use of the tip credit towards the minimum wage as stated in 7 CCR 1103-1.

73.     Additionally, Defendants violated Colorado Wage Laws by requiring Plaintiff Khalid and the Colorado Class members to perform non-tipped work that was *unrelated* to their tipped occupation as a server (i.e. "dual jobs") while receiving a subminimum hourly wage. *See* COLO. DEP'T OF LABOR AND EMP'T INTERPRETATIVE NOTICE & FORMAL OPINION ("INFO") #3: TIPS (GRATUITIES) AND TIPPED EMPLOYEES UNDER COLORADO WAGE LAW ("[r]egardless of

federal law, the 80/20 rule applies under Colorado law, because the minimum wage reduction for tipped work is an exception to the full minimum wage, and all exceptions to wage rights are construed narrowly under C.R.S. 8-6-102 and 7 CCR 1103-1-8").

74.     For example, Defendants regularly and frequently required Plaintiff Khalid and the Colorado Class members to perform a number of non-tipped duties *unrelated* to their tipped occupations as servers, including but not limited to: polishing glasses, silverware, and plates; cleaning windows; setting up and taking down patio furniture; cleaning and stocking condiments, assisting in kitchen preparation and food preparation; setting up cocktail lounge; and setting up the bread stations.

75.     Defendants paid Plaintiff Khalid and the Colorado Class members a subminimum hourly wage for all hours Plaintiff Khalid and the Colorado Class members worked for Defendants, including for their time spent performing duties that are *unrelated* to Plaintiff Khalid's and the Colorado Class members' tipped occupations.

76.     In addition to performing duties *unrelated* to their jobs as servers, Defendants also regularly and frequently required Plaintiff Khalid and the Colorado Class members to perform a number of non-tipped duties related to their tipped occupation, including but not limited to: wiping down tables, stocking and setting tables, running food, rolling silverware, and other "side-work." These nontipped duties related to Plaintiff Khalid's and the Colorado Class members' tipped occupation exceeded twenty percent (20%) of their time worked during each workweek, which is a violation of Colorado Wage Laws. *See Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1284 (10th Cir. 2017) (citing *Fast v. Applebee's Int'l, Inc*., 638 F.3d 872, 875 (8th Cir. 2011)) ("30d00(e) of the applicable version of the DOL's Field Operations Handbook (FOH) 'provides that if a tipped employee spends a substantial amount of time (defined as more than 20 percent) performing

related but nontipped work, . . . then the employer may not take the tip credit for the amount of time the employee spends performing those duties.'").

77.     Furthermore, Defendants violated Colorado Wage Laws by preventing Plaintiff Khalid and the Colorado Class members from taking state mandated meal periods and rest periods. *See* 7 CCR 1103-1-5; *see also Latham v. High Mesa Communs.*, 2020 U.S. Dist. LEXIS 49746, *30-31 (D. Colo. 2020) (citing *Lozoya v. Allphase Landscape Constr., Inc.*, 2015 U.S. Dist. LEXIS 49493, *5-6 (D. Colo. 2015)) (finding that missed rest periods can constitute "wages or compensation" and thus plaintiffs may prevail on their claim for lost wages because of unused rest breaks); *Sanchez v. Front Range Transp.*, 2017 U.S. Dist. LEXIS 150069, *11-12 (D. Colo. 2017) (holding that employees may bring a private right of action for damages of violations of Colorado Wage Laws, other than minimum wage violations); *Sobolewski v. Boselli & Sons, LLC*, 342 F. Supp. 3d 1178, *1184 (D. Colo 2018) (held that plaintiff may bring a private civil action for violations of meal and rest period regulations).

78.     For instance, Defendants' policy and practice for meal periods and rest periods was and is non-existent. Plaintiff Khalid and the Colorado Class members were not allowed to eat while completing a shift that exceeded five (5) consecutive hours, nor were they ever relieved of all duties and permitted to pursue personal activities for at least thirty (30) minutes. Moreover, Plaintiff Khalid's and the Colorado Class members' schedules did not permit nor were they compensated for ten (10) minute rest periods for shifts exceeding two (2) hours in length.

79.     Defendants further violated 7 CCR 1103-1-5 by not compensating Plaintiff Khalid and the Colorado Class members for each required rest period for shifts exceeding two (2) hours.

80.     Defendants' method of paying Plaintiff Khalid and the Colorado Class members in violation of Colorado Wage Laws was willful. Therefore, a three-year statute of limitations applies due to the willful nature of the violations. *See* C.R.S. § 8-4-122.

81.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Khalid and the Colorado Class members have suffered damages in an amount to be determined at trial.

82.     During the three-year period prior to this suit, Defendants employed individuals in Colorado who performed similar job duties under a similar payment scheme as was used to compensate Plaintiff Khalid. Because there are other Colorado Class members whose claims are typical to those claims asserted by Plaintiff Khalid with regard to work performed and Defendants' compensation practices and policies, Plaintiff Khalid brings this action as a class action under Federal Rule of Civil Procedure 23, to recover unpaid wages, misappropriated tips, pre- and post-judgment interest, attorneys' fees, and costs on behalf of himself and all other class members.

### FLSA COLLECTIVE ACTION ALLEGATIONS

83.     The foregoing paragraphs are fully incorporated herein.

84.     Plaintiffs bring these FLSA claims as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) (the "FLSA Collective"). In addition to the claims of the named Plaintiffs, Plaintiffs bring this action as a representative of all similarly situated former and current employees of Defendants. The proposed collective of similarly situated employees (the "FLSA Collective") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> **All individuals who worked as servers for Defendants at any of their restaurants located** in Colorado, Alabama, North Carolina, or Florida**, at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage.**

85.     FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

86.     Other employees have been victimized by Defendants' common pattern, practice, and scheme of paying employees in violation of the FLSA. Plaintiffs are aware of other employees who were paid in the same unlawful manner as Plaintiffs. Plaintiffs are aware that the illegal practices or policies of Defendants have been uniformly imposed on other servers who worked for Defendants. Specifically, Plaintiffs are aware of other servers who were required to pay for business expenses and who contributed tips to the same tip pool in which Defendants illegally retained a portion of the tips.

87.     Plaintiffs and the FLSA Collective members have the same pay structure, have the same job duties, were required to participate in the tip pool from which a portion of the tips were distributed to ineligible participants, were required to pay for non-203(m) items, and were required to perform non-tipped duties while being paid at the subminimum "tipped wage." Plaintiffs and the FLSA Collective members are all victims of Defendants' unlawful compensation scheme.

88.     Plaintiffs and the FLSA Collective members are all non-exempt for purposes of minimum wage payments under the FLSA.

89.     Defendants' failure to pay minimum wage pursuant to the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Collective members. Plaintiffs' experiences regarding pay are typical of the experiences of the FLSA Collective members.

90.     Although the exact amount of damages may vary among the FLSA Collective members, the damages for the FLSA Collective members can be calculated using a single formula. The FLSA Collective members' claims arise from a common nucleus of facts. Defendants' systematic course of illegal conduct in violation of the FLSA's minimum wage requirements caused harm to Plaintiffs and the FLSA Collective members.

**COLORADO CLASS ACTION ALLEGATIONS**

91.     The above and foregoing paragraphs are incorporated herein as if set forth in full.

92.     Plaintiff, Anderson Khalid seeks to represent a class of similarly situated tipped employees—servers—under Colorado Wage Laws and pursuant to Federal Rule of Civil Procedure 23. The Colorado Class sought to be certified is defined as:

> **All of Defendants' current and former employees who worked as servers in at least one week in Colorado within the three (3) years preceding the filing of this lawsuit and who were paid a subminimum hourly wage pursuant to Colorado Wage Law.**

93.     The members of the Colorado Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 150 members of the Colorado Class.

94.     While the precise number of the Colorado Class members is unknown, at least 150 Colorado Class members work or worked for Defendants in at least one workweek in Colorado during the past three (3) years preceding the filing of this lawsuit.

95.     Plaintiff Khalid and the Colorado Class members were all paid a subminimum hourly wage pursuant to the Colorado state tip credit and were subject to the same common patterns and practices as directed by and established by Defendants. Defendants' failure to adhere to Colorado Wage Laws is a result of Defendants' application of its systematic policies and practices. Plaintiff Khalid's claims are therefore typical of the claims of the Colorado Class members.

96.     Plaintiff Khalid will fairly and adequately represent and protect the interests of the Colorado Class because there is no conflict between the claims of Plaintiff Khalid and those of the Colorado Class. Plaintiff Khalid's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases similar to this case.

97.     There are questions of law and fact common to the proposed Colorado Class, which predominate over any questions affecting only individual members, including, without limitation:

a.      whether Defendants have violated and continue to violate (1) statutory and common law through its policies and practices of paying Colorado Class members pursuant to the Colorado state tip credit while committing a clear act which nullifies an allowable use of the tip credit; and (2) Colorado Wage Laws and common law through its policies and practices of dissuading and preventing the Colorado Class members from taking meal periods and rest periods;

b.      The proper measure of damages sustained by the Colorado Class members; and

c.      whether Defendants should be enjoined for such violations in the future.

98.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2). Defendants acted or refused to act on grounds generally applicable to the Colorado Class members. Final injunctive and/or declaratory relief is appropriate to the Colorado Class members as a whole.

99.     Plaintiff Khalid's claims are typical of the claims of the Colorado Class in the following ways, without limitation: (a) Plaintiff Khalid is a member of the Colorado Class; (b) Plaintiff Khalid's claims are of the same policies, practices, and course of conduct that form the basis of the claims of the Colorado Class; (c) Plaintiff Khalid's claims are based on the same legal and remedial theories as those of the Colorado Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Khalid and the Colorado Class members; and (e) the injuries suffered by Plaintiff Khalid are similar to the injuries suffered by the Colorado Class members.

100.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Colorado Class predominate over any questions affecting only individual Colorado Class members.

101.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

102.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy because—in the context of wage and hour litigation— individuals lack the financial resources to vigorously prosecute lawsuits against large corporations.

103.     Members of the Colorado Class are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Colorado Class would create the risk of inconsistent or varying adjudications with respect to individual Colorado Class members that would establish incompatible standards of conduct for Defendants.

104.     Class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Colorado Class members, while substantial, are not great enough to enable them each to maintain separate suits against Defendants.

105.    Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff Khalid and the Colorado Class. Plaintiff Khalid does not envision any difficulty in the management of this action as a class action.

106.    Upon Court authorization, Plaintiff Khalid intends to send notice to the Rule 23 Colorado Class members to the extent required by Fed. R. Civ. 23(c).

**C<small>OUNT</small> I**
**F<small>AIR</small> L<small>ABOR</small> S<small>TANDARDS</small> A<small>CT</small> V<small>IOLATIONS</small>**
***(on Behalf of Plaintiffs and FLSA Collective Members)***

107.    The foregoing paragraphs are fully incorporated herein.

**A.    Minimum Wage Violations under the FLSA.**

108.    Defendants' failure to pay Plaintiffs and the FLSA Collective members at the full minimum wage rate is a violation of the FLSA's minimum wage requirement. *See* 26 U.S.C. § 206.

109.    During the relevant period, Defendants have violated and are violating the provisions of Section 6 of the FLSA, 29 U.S.C. § 206, and 215(a)(2), by employing Plaintiffs and the FLSA Collective members in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay such employees at the minimum wage rate.

110.    Defendants failed to pay Plaintiffs and the FLSA Collective members the full minimum wage according to the provisions of the FLSA for each hour and workweek that Plaintiffs and the FLSA Collective members worked for Defendants during the statutory time period in violation of 29 U.S.C. § 206(a).

111.    In addition, to the extent Defendants intend to rely on the "tip credit" as an affirmative defense to the payment of minimum wage, Defendants have violated the tip credit

because Defendants: (1) failed to allow Plaintiffs and the FLSA Collective members to retain all of their tips; (2) required Plaintiffs and the FLSA Collective members to contribute tips to an illegal tip pool; (3) required Plaintiffs and the FLSA Collective members to incur business expenses; (4) required Plaintiffs and the FLSA Collective members to perform non-tipped work *unrelated* to Plaintiffs' and the FLSA Collective members' tipped occupation; and (5) required Plaintiffs and the FLSA Collective Members to perform non-tipped work that, although related to Plaintiff and Collective Members' tipped occupation, exceeded twenty percent (20%) of their time worked during each workweek.

112.    Defendants' illegal practices in violation of the FLSA result in Defendants' forfeiture of the tip credit, and therefore, Defendants are precluded from relying on tips to supplement Plaintiffs' and the FLSA Collective members' subminimum hourly rate. Consequently, Defendants are liable to Plaintiffs and the FLSA Collective members for the full minimum wage for every hour worked during the statutory time period plus all other statutory damages and penalties provided for under the FLSA.

113.    At all times relevant, Defendants compensated Plaintiffs and the FLSA Collective members less than minimum wage. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate, including the tip credit, are applicable to Defendants, Plaintiffs, or the FLSA Collective members.

114.    Because there are other putative FLSA Collective members who are similarly situated to Plaintiffs with regard to work performed and Defendants' compensation policies, Plaintiffs bring this lawsuit as a collective action under § 216(b) of the FLSA to recover unpaid

wages, misappropriated tips, liquidated damages, attorneys' fees, and costs on behalf of themselves and the FLSA Collective members.

**B.    Unlawful Kickbacks under the FLSA.**

115.    The business expenses that Defendants required Plaintiffs and the FLSA Collective members to pay for and the mandatory tip-outs that Defendants required from Plaintiffs and the FLSA Collective members constitute unlawful "kick-backs" to an employer, which is proscribed by the FLSA, 29 U.S.C. § 203(m).

116.    In addition, section 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

117.    The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

118.    Plaintiffs and the FLSA Collective members are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

<u>COUNT II</u>
COLORADO WAGE CLAIM ACT VIOLATIONS
(*on behalf of Plaintiff and Colorado Class Members*)

119.    The above and foregoing paragraphs are incorporated herein as if set forth in full.

**A.    Minimum Wage Violations under the Colorado Wage Laws.**

120.    Pursuant to Colorado Wage Laws, employers, such as Defendants, who fail to pay an employee wages in conformance with Colorado Wage Laws shall be liable to the employee for the balance of the full amount of wages owed, together with attorney fees and court costs. *See* 7 CCR 1103-1-8.

121.     During the relevant time period, Defendants violated and continue to violate Colorado Wage Laws by regularly and repeatedly failing to pay Plaintiff Khalid and the Colorado Class members the full minimum wage according to the provisions of the Colorado Wage Laws. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Khalid and the Colorado Class members have suffered and will continue to suffer from a loss of income and other damages. Moreover, Plaintiff Khalid requests that this lawsuit encompass all violations that occurred as a part of Defendants' continued course of conduct regardless of the date on which they occurred.

122.     Plaintiff Khalid and the Colorado Class members are entitled to unpaid minimum wage compensation and all other damages and penalties provided for under Colorado law.

**B.     Meal Period and Rest Period Violations under Colorado Wage Laws.**

123.     Additionally, pursuant to Colorado Wage Laws, employers, such as Defendants must allow employees to take state mandated meal periods for shifts that exceeds five (5) consecutive hours and rest periods for any shift that exceeds two (2) hours in length. *See* 7 CCR 1103-1-5.

124.     During the relevant time period, Defendants violated and continue to violate Colorado Wage Laws by disallowing Plaintiff Khalid and the Colorado Class members to take meal periods and rest periods that are required by Colorado Wage Laws. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Khalid and the Colorado Class members have suffered and will continue to suffer from a loss of income and other damages. Moreover, Plaintiff Khalid requests that this lawsuit encompass all violations that occurred as a part of Defendants' continued course of conduct regardless of the date on which they occurred.

125.    Plaintiff Khalid and the Colorado Class members are entitled to minimum wage compensation for each shift in which they were prevented from taking a state mandated rest period or meal period as required by Colorado Wage Laws.

\*        \*        \*

## PRAYER

126.    Plaintiffs on an individual basis and on behalf of the FLSA Collective members pray for judgment against Defendants, jointly and severally, as follows:

    a.    For an order pursuant to Section 216 of the FLSA finding Defendants liable for unpaid wages (including all misappropriated tips and all unlawful expenses incurred) due to Plaintiffs (and those who join in the suit), and for liquidated damages equal in amount to the unpaid minimum wages (including all misappropriated tips and paid business expenses) due to Plaintiffs (and those who join in the suit);

    b.    For an order awarding Plaintiffs (and those who join in the suit) an amount of pre-judgment interest, as may be appropriate, and post-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

    c.    For an order awarding Plaintiffs (and those who join in the suit) all attorneys' fees incurred;

    d.    For an order awarding Plaintiffs (and those who join in the suit) all costs and expenses incurred in pursuing this action; and

    e.    For an order granting any such other and further relief as this Court deems just and appropriate.

127.    Plaintiff Khalid, on an individual basis and on a representative basis on behalf of the Colorado Class members, respectfully requests that judgement be entered in their favor and against Defendants, jointly and severally, awarding Plaintiff Khalid on an individual basis and on a representative basis on behalf of the Colorado Class members the following relief:

    a.    For an Order certifying the Colorado Wage Law claims as a Class Action pursuant to Fed. R. Civ. P. 23, for designation of Plaintiff Khalid as Class Representative

under Colorado Wage Laws, and for designation of Plaintiff's counsel as class counsel;

b.      For Judgment that Defendants violated Colorado Wage Laws by failing to pay Plaintiff and the Colorado Class members in accordance with Colorado Wage Laws;

c.      For an Order awarding Plaintiff and the Colorado Class members all unpaid minimum wage compensations, pre- and post- judgment interest, and all other available damages and penalties in accordance with Colorado Wage Laws;

d.      For all court costs, expenses, and attorneys' fees incurred prosecuting this claim, as allowed by the Colorado Wage Laws;

e.      An order for injunctive relief pursuant to Colorado Wage Laws; and

f.      Any other and further relief to which Plaintiff and the Colorado Class members may be entitled.

Respectfully submitted,

By: _/s/ Drew N. Herrmann_____

Drew N. Herrmann
Texas Bar No. 24086523
_drew@herrmannlaw.com_
Pamela G. Herrmann
Texas Bar No. 24104030
_pamela@herrmannlaw.com_

**HERRMANN LAW, PLLC**
801 Cherry St., Suite 2365
Fort Worth, TX 76102
Phone: 817-479-9229
Fax: 817-887-1878

ATTORNEYS FOR PLAINTIFFS,
FLSA COLLECTIVE MEMBERS,
AND COLORADO CLASS MEMBERS

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 16, 2021 a true and correct copy of the above document will be served as follows:

Lionel Schooler                                    *Via e-mail:* *lschooler@jw.com*
lschooler@jw.com
Jackson Walker LLP
1401 McKinney Ave., Suite 1900
Houston, Texas 77010
Attorney for Defendants

*/s/ Drew N. Herrmann*
Drew N. Herrmann