IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0023-WJM-NRN

LANCE GREEN, and
ANDERSON KHALID, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

PERRY'S RESTAURANTS LTD,
PERRY'S STEAKHOUSE OF COLORADO, LLC, collectively d/b/a PERRY'S STEAKHOUSE AND GRILLE, and
CHRISTOPHER V. PERRY, individually,

    Defendants.

---

**ORDER GRANTING PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

---

Before the Court is Plaintiffs Lance Green and Anderson Khalid's, individually and on behalf of all others similarly situated (jointly, "Plaintiffs"), Opposed Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("Motion").  (ECF No. 65.)  Defendants Perry's Restaurants Ltd, Perry's Steakhouse of Colorado, LLC, collectively d/b/a Perry's Steakhouse and Grille, and Christopher V. Perry, individually (collectively, "Defendants"), filed a response (ECF No. 73.)  Plaintiffs filed a reply.  (ECF No. 78.)

For the following reasons, the Motion is granted.

# I. BACKGROUND[1]

The Court draws the following summary from Plaintiffs' First Amended Class Action and Collective Action Complaint ("Complaint"). (ECF No. 13.) The Court's summary is not meant to imply that Plaintiffs' allegations are true, or even that they will have support, but is solely to provide context for their request to conditionally certify a collective action and for Defendants' opposition to that request.

On February 16, 2021, Plaintiffs filed the Complaint against Defendants for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., as amended ("FLSA"), the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101, *et seq*. ("CWCA"), and Colorado Overtime and Minimum Pay Standards Order (COMPS ORDER) #36, 7 CCR 1103-1 (together, "Colorado Wage Laws"). (*Id.*) This is a class and collective action brought by Plaintiffs on behalf of themselves and all others similarly situated under Federal Rule of Civil Procedure 23 and under 29 U.S.C. § 216(b). (¶ 1.) The putative class and collective members are all individuals employed by Defendants as servers in Colorado, Alabama, North Carolina, or Florida, who were paid a direct cash subminimum hourly wage. (*Id.*) Plaintiffs and the other similarly situated individuals they seek to represent are current and former servers, who are tipped employees under the FLSA and Colorado Wage Laws. (¶ 2.)

Perry's[2] owns and operates the Perry's Steakhouse and Grille, which has locations in Texas, Alabama, Illinois, Tennessee, Colorado, Florida, and North Carolina.

---

[1] Citations to (¶ __), without more, are references to the Complaint.

[2] Perry's Restaurants Ltd., more commonly known as Perry's Steakhouse and Grille, are referred to jointly as "Perry's."

(¶ 22.)  Plaintiffs and the Collective Members[3] were employed by Perry's as servers at one or more of Perry's restaurant locations within the three years preceding the filing of this lawsuit. (¶¶ 35–37.)  All servers, regardless of the Perry's restaurant location, are subject to the same compensation structure and pay policies, maintain identical job titles, job positions, and are all required to perform the same or similar job duties (including side work duties), and are required to contribute tips to a mandatory tip pool.

**A.     Tip Credit**

Perry's pays all of its servers subminimum hourly wages and claims a "tip credit" for a portion of the tips its servers earn to offset Perry's obligation to pay the minimum wage required by Section 206 of the FLSA.  (¶¶ 41, 43.)  All servers, including Plaintiffs and the Collective Members, are paid a subminimum hourly wage plus tips and are required to contribute a portion of their earned tips to a mandatory tip pool.  (¶ 44.)  Perry's then relies on the tips Plaintiffs and the other servers receive from customers to offset the servers' subminimum hourly wage and bring their effective rate of pay, with tips included, up to the required minimum hourly wage. (¶¶ 37, 41–43.)

Perry's also requires Plaintiffs and the other servers to participate in a mandatory tip pooling arrangement that requires every server to contribute a portion their tips— fixed percentage (4.5%) of each server's food and alcohol sales during their shift—to a mandatory tip pool.  (¶¶ 46, 69.)  However, Plaintiffs allege that in violation of the FLSA's tip credit, Perry's does not fully distribute the pooled tips solely among

---

[3] The Putative Collective Members are all individuals who worked as servers at any one or more of Defendants' restaurants located in Colorado, Alabama, North Carolina, or Florida, at any time during the three year period preceding the filing of this lawsuit and were paid a direct cash wage of less than minimum wage.  (¶ 18.)

customarily and regularly tipped employees.  (¶ 72.)

**B.      Side Work**

Plaintiffs and Collective Members are paid a subminimum hourly wage to perform a number of non-tipped duties ("side work"), both related and unrelated to their tipped occupation as servers, including but not limited to resetting chairs and tables and cleaning tables; cleaning different areas of the restaurant and running food; polishing glassware and silverware and cleaning steak trays; preparing bread for the oven and whipping butter to pipe into ramekins; and conducting inventory checks (*i.e.* counting plates, silverware, check presenters, and decanters).  (¶ 55.)  Servers, including Plaintiffs and Collective Members, spend more than 20% of their shift time during each workweek performing related side work.  (*Id.*)  However, Perry's only pays its servers a subminimum hourly rate for all hours worked, regardless of the type of job duties performed and the amount of time spent performing non-tipped job duties.

**C.      Uniforms and Business Expenses**

Perry's requires Plaintiffs and Collective Members to pay for various business expenses such as ink pens, server books, wine openers, pepper mills and holsters, and crumb scrapers.  (¶ 50.)  Perry's also requires servers to pay for specific mandatory uniforms such as shirts, aprons, and vests.

**D.      Proposed Collective and Class Definitions**

The proposed collective of similarly situated employees (the "FLSA Collective") sought to be certified pursuant to 29 U.S.C. § 216(b), is defined as:

> All individuals who worked as servers for Defendants at any of their restaurants located in Colorado, Alabama, North Carolina, or Florida, at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage.

4

(¶ 84.)

Plaintiff Anderson Khalid seeks to represent a class of similarly situated tipped employees—servers—under Colorado Wage Laws and pursuant to Federal Rule of Civil Procedure 23. The Colorado Class sought to be certified is defined as:

> All of Defendants' current and former employees who worked as servers in at least one week in Colorado within the three (3) years preceding the filing of this lawsuit and who were paid a subminimum hourly wage pursuant to Colorado Wage Law.

(¶ 92.)

## II. LEGAL STANDARD[4]

The FLSA permits collective actions where the allegedly aggrieved employees are "similarly situated." 29 U.S.C. § 216(b). Whether employees are similarly situated is judged in two stages: a preliminary or "notice stage" (at issue here) and then a more searching, substantive stage, usually after the close of discovery. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001). At the notice stage, a plaintiff must offer "nothing more than substantial allegations that the putative [collective action] members were together the victims of a single decision, policy, or plan." *Id*. at 1102 (internal quotation marks omitted); *see also Boldozier v. Am. Fam. Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005) (applying *Thiessen*

---

[4] To the extent Defendants argue that Court should follow the Fifth Circuit's approach in *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430, 442 (5th Cir. 2021), where a court considers the merits when determining the propriety of collective treatment, the Court declines to do so, as *Swales* is not binding Supreme Court or Tenth Circuit authority, nor does the Court find persuasive the reasoning of that decision. *See Morris v. MPC Holdings, Inc.*, 2021 WL 4124506, at *2 (D. Colo. Sept. 9, 2021) (granting conditional certification and rejecting argument that court should follow *Swales*); *Buffington v. Ovintiv USA Inc.*, 2021 WL 3021464, at *2 (D. Colo. July 16, 2021) (declining to follow *Swales*), *motion to certify appeal denied*, 2021 WL 3726195 (D. Colo. Aug. 23, 2021).

5

standard). The standard for certification at this stage is a lenient one. *See Thiessen*, 267 F.3d at 1103; *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483, 485 (D. Kan. 2004).

If the plaintiff meets this standard, the Court may order the defendant to provide contact information for all employees and former employees that may be eligible to participate in the collective action, and the Court may approve a form of notice to be sent to all of those individuals. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–74 (1989). Such notice is often necessary because, unlike class actions under Federal Rule of Civil Procedure 23, collective actions under the FLSA require a party to opt in rather than opt out of the putative collective action. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Obviously, current or former employees cannot opt in if they do not know about the pending action.

## III. ANALYSIS[5]

Plaintiffs propose that the Court conditionally certify the collective action, approve their proposed form of notice, and approve their proposed notice plan. (ECF No. 65.) Defendants object to conditional certification on substantive grounds, and alternatively object to portions of the proposed notice and notice plan. The Court will address the substantive objections first, followed by the notice-related objections.

---

[5] In their briefs, the parties cite their exhibits but often do not cite page numbers to direct the Court to the information on which they rely. With so many exhibits with numerous pages, the Court directs the parties to cite the page numbers of their exhibits (preferably the CM/ECF page numbers, if possible) in all future briefing.

6

### A.      Substantive Objections

#### 1.      Plaintiffs' Declarations

Defendants argue that Plaintiffs' declarations are not based on their personal knowledge and contain conclusory and hearsay allegations that should not be considered.  (ECF No. 73 at 5.)

Despite this assertion, at the notice stage, the Court finds that Plaintiffs have made allegations sufficient to withstand Defendants' objections.  Plaintiffs' declarations are based on their personal knowledge, obtained during employment with Perry's and discussions with other co-workers about Perry's policies.  (ECF No. 78 at 3 (citing exhibits)); *see Stallings v. Antero Res. Corp.*, 2018 WL 1250610, at *3 (D. Colo. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 2561046 (D. Colo. Apr. 16, 2018) ("Courts within the Tenth Circuit have relied upon a plaintiff's discussions with others to find that there are substantial allegations that the plaintiff(s) and the putative opt-in plaintiffs were together the victims of a single decision, policy, or plan."); *see also Murphy v. Allstaff Med. Res., Inc.*, 2017 WL 6945036, at *2 (D. Colo. June 13, 2017); *Sharp v. CGG Land (U.S.) Inc.*, 2015 WL 222486, at *2 (N.D. Okla. Jan. 14, 2015) (considering a plaintiff's affidavit in its entirety, despite defendant's hearsay objections, because holding plaintiff to the Federal Rules of Evidence standards at the notice stage fails to take into account that plaintiff has not yet been afforded an opportunity, through discovery, to test the factual basis for his case).  The Court will consider Plaintiffs' declarations, despite the hearsay contained therein.

#### 2.      Defendants' Employer Status

In the Tenth Circuit, whether one is an employer under the FLSA is determined by applying an "economic realities" test.  *See Goldberg v. Whitaker,* 366 U.S. 28, 33, 81

(1961); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994). The undersigned has stated in at least one previous FLSA action that "[s]atisfying the economic realities test is a merits inquiry and far beyond the typical requirement at the conditional certification phase, which demands only 'substantial allegations that the putative [collective action] members were together the victims of a single decision, policy, or plan.'" *Scott v. Antero Res. Corp.*, 2018 WL 11246698, at *2 (D. Colo. Feb. 26, 2018) (citing *Thiessen*, 267 F.3d at 1102 (internal quotation marks omitted)).

Defendants argue that PRL's level of involvement does not rise to the level of employer status. (ECF No. 73 at 7.) To the extent Defendants dispute their involvement or employer status, under the foregoing Tenth Circuit case law, this analysis is premature at the notice stage, and the Court will not further address it here.

    3.    <u>Common Practice or Policy in Florida or North Carolina</u>

Defendants argue that Plaintiffs cannot establish allegations of any common practice or policy in Florida or North Carolina. (ECF No. 73 at 8.) Defendants state that Plaintiffs do not offer a declaration from any employee who has been employed at the Raleigh or Coral Gables locations, instead solely relying on declarations from Birmingham or Denver employees. (*Id.* at 8–9.) Therefore, they request that notice as to servers who have worked at the North Carolina and Florida locations be denied. (*Id.* at 9.)

In light of Defendants' arguments and the passage of time since the Motion was filed, the Court permitted Plaintiffs the opportunity to supplement the Motion with declarations from putative plaintiffs from North Carolina and Florida. (ECF No. 88.) Plaintiffs did so. (ECF Nos. 90-1–90-4.)

The Court also permitted Defendants to file a response to any such supplement

that addresses the impact of the declarations on their argument that Plaintiffs cannot establish allegations of common practice or policy in North Carolina or Florida. (*Id.*) Defendants did not file any response. Therefore, the Court considers Defendants' lack of response a concession that their arguments on this issue are moot in light of the supplemental declarations from putative plaintiffs who worked at the North Carolina and Florida restaurants. *See Meyer v. Bd. of Cnty. Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007) ("[W]e are not charged with making the parties' arguments for them."); *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir.1992) (quoting *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'")).

    4.    <u>Individualized Determinations as to Tip Pool, Side Work, and Uniform Claims</u>

Defendants argue that Plaintiffs' claims concerning tip pool, side work, and uniforms require individualized determinations not appropriate for a collective action. With respect to the tip pool, Defendants argue that each of the restaurant locations has an established tip pool, and the accounting and payroll records for each location are maintained individually and separately from each other. (ECF No. 73 at 9.) According to Defendants, how the tip pool is distributed varies from location to location, and Defendants argue that Plaintiffs cannot "possibly know about the results of any tip distribution except based upon what someone else told them." (*Id.*) As such, Defendants argue that Plaintiffs' allegations "amount to nothing more than impermissible inferences and assumptions," with "no competent evidence of a violative tip pooling policy." (*Id.* at 10.)

9

With respect to the side work claim, Defendants argue that Plaintiffs' evidence demonstrates that the amount of time spent on related side work is "an inherently individualized inquiry," because each side work assignment is different and they fail to provide evidence of time actually spent performing the side work assignments. (*Id.* at 11.) Defendants challenge Plaintiffs' purportedly "erroneous characterization of what constitutes 'related' side work." (*Id.* at 13.)

Finally, with respect to Plaintiffs' claims that they were required to pay for business expenses, such as their uniforms, Defendants point out that servers receive their first set of uniforms and equipment at no charge. (ECF No. 76-14 at 2 ("All new hires will receive the first required set at no charge.").) And, to the extent an individual server has randomly received a deduction for a lost uniform, "that event does not transform such an isolated occurrence into a broadly-based 'similar situation' for all servers in Colorado, Alabama, Florida, and North Carolina." (ECF No. 73 at 14.) Defendants argue that Plaintiffs present no evidence that such a charge is levied on a regular basis across the board to all servers. (*Id.*)

Plaintiffs reply that Defendants' "policies regarding tip sharing, tip pooling, nightly checkout, credit card tip procedures, tip reports implemented and used, and giving rise to the violations alleged in this action are created and directed to each location in Colorado, Alabama, North Carolina, and Florida." (ECF No. 78 at 5.) Additionally, Plaintiffs emphasize that

> Defendants do not dispute that all servers are subject to company-wide practices and policies, specifically the same pay policies identifying that all servers were 1) paid in the same manner—a direct subminimum hourly wage pursuant to the tip credit; 2) required to contribute a portion (4.5%) to a mandatory tip pool; 3) required to perform *related* and

10

> *unrelated* side work duties at a subminimum hourly wage; and 4) deducted for uniforms and business expenses—at each of the Perry's locations in Colorado, Alabama, North Carolina, and Florida.

(*Id.* at 5–6 (emphasis in original).)  With respect to Plaintiffs' claims concerning the uniform and business-related expenses policies, Plaintiffs argue that they have provided sufficient evidence that they were subject to the same uniform deduction policy.  (*Id.* at 6–7.)  And finally, Plaintiffs reiterate that Defendants admit they have a side work policy at all four locations.  (*Id.* at 7.)  In response to Defendants' arguments that the side work claims are inherently individualized because duties, schedules, and locations where servers performed job duties varied, Plaintiffs argue that such arguments are premature at the conditional certification stage.  (*Id.* at 7 (citing cases stating that such considerations are not controlling at the conditional certification stage).)

The Court agrees.  Plaintiffs have made "substantial allegations that the putative class members were together the victims of a single decision, policy or plan," which is all they must do at this, the conditional certification, stage.  *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).  Therefore, the Court rejects this basis for denying conditional certification.

**B.     Notice**

    1.     <u>Request</u>

Plaintiffs request that the Court: (1) approve Plaintiffs' proposed Notice and Consent Form (ECF No. 76-19) and Plaintiffs' proposed e-mail and text message notice (ECF No. 76- 20); (2) authorize the proposed methods for transmitting notice to putative collective members; (3) order Perry's to produce contact information for all Putative Collective Members within fourteen days; and (4) authorize a 90-day opt-in period to

join this collective action.  (ECF No. 65 at 13.)

Plaintiffs request that Perry's be ordered to produce within 14 days of the granting of the Motion a list in electronic format (*i.e.*, an Excel (.xls) file) of "all potential collective action members, which shall include each such employee's or former employee's name, position, dates of employment, last known mailing address, last known e-mail address, and last known telephone number." (*Id.* at 13–14 (citing *Clark v. Strad Energy Servs., USA*, 2018 U.S. Dist. LEXIS 113393, at *7 (D. Colo. July 9, 2018); *Lindsay v. Cutters Wireline Serv.*, 2018 U.S. Dist. LEXIS 145368, at *11 (D. Colo. Aug. 27, 2018); *Warren v. MBI Energy Servs.*, 2020 U.S. Dist. LEXIS 173198, at *9 (D. Colo. Sep. 22, 2020) (ordered to produce "names, last known address, email addresses, telephone number, and dates of employment . . . in a useable electronic format")).) Plaintiffs request to send the proposed Notice and Consent form (ECF No. 76-19) by mail, and the proposed notice (ECF No. 76-20) via e-mail and text message to putative collective members. (*Id.* at 14.)  Plaintiffs request leave for their counsel to be permitted to maintain a website limited to posting the approved Notice and Consent Form. Plaintiffs also request that putative collective members be afforded the opportunity to electronically sign their consent forms. (*Id.* (citing 15 U.S.C. § 7001(a)(1)).)

Plaintiffs request a 90 day opt-in period from the initial date of transmitting the notice and consent forms. (*Id.* at 14–15.)  After the passage of 30 days, Plaintiffs request permission to send a reminder notice (ECF No. 76-21) to putative collective members who have not yet responded to the initial notice and consent form. (*Id.* at 15.)

2. <u>Objections</u>

Defendants list their objections to the proposed notice and scope of collective action without explaining the basis for their objections or citing any legal authority in

support.  Specifically, Defendants object to

> the proposed notice and scope of collective action described in the Motion regarding the "applicable time period" to be covered by the notice (that is, starting from a date before the date of the Order), the inclusion of geographical locations beyond the Birmingham and Denver Locations, the allocation of costs, and the form of notice to prospective claimants that permits Plaintiffs' counsel to solicit them as clients in pursuing any future litigation.
>
> Further, PRL opposes Plaintiffs' suggestion that it should bear the burden of creating or obtaining after-the-fact contact information about prospective claimants that it does not maintain in the ordinary course of business; likewise objects to using "electronic signatures" without security safeguards for such a procedure; and objects to use of a "website" for any form of communication.

(ECF No. 73 at 15.)

Upon review, the Court overrules these objections and finds no need to conduct a hearing, as Defendants requested, to discuss them.  Defendants failed to provide a basis for their objections in the brief, and nonetheless, the Court finds them to be without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Opposed Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 65) is GRANTED;

2. The Court APPROVES Plaintiffs' proposed Notice and Consent Form (ECF No. 76-19) and Plaintiffs' proposed e-mail and text message notice (ECF No. 76-20);

3. Defendants are DIRECTED to produce, no later than **November 21, 2022**, a list in electronic format (*i.e.*, an Excel (.xls) file) of all potential collective action members, which shall include each such employee's or former employee's name,

13

position, dates of employment, last known mailing address, last known e-mail address, and last known telephone number;

4. Plaintiffs are authorized to send the proposed Notice and Consent Form (ECF No. 76-19) by mail and the proposed notice (ECF No. 76-20) via e-mail and text message to putative collective action members;

5. Plaintiffs' counsel is authorized to maintain a website limited to posting the approved Notice and Consent Form;

6. Putative collective action members may electronically sign their consent forms;

7. The opt-in period shall begin on the initial date of transmitting the Notice and Consent Forms and shall run for 90 consecutive days; and

8. After the passage of 30 days, Plaintiffs may send a reminder notice (ECF No. 76-21) to putative collective action members who have not yet responded to the initial Notice and Consent Form.

Dated this 7th day of November, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge