IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-0023-WJM-NRN

LANCE GREEN, and
ANDERSON KHALID, individually and on behalf of all others similarly situated,

 Plaintiffs,

v.

PERRY'S RESTAURANTS LTD, and
PERRY'S STEAKHOUSE OF COLORADO, LLC, collectively d/b/a PERRY'S STEAKHOUSE AND GRILLE,

 Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DECERTIFY THE FLSA COLLECTIVE ACTION**

Before the Court is Defendants Perry's Restaurants LTD ("PRL") and Perry's Steakhouse of Colorado, LLC's ("PSC") (jointly, "Defendants") Motion to Decertify the FLSA Collective Action ("Motion") (ECF No. 160). Plaintiffs Lance Green and Anderson Khalid, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), filed a response. (ECF No. 171). Defendants filed a reply. (ECF No. 188.)

For the following reasons, the Motion is granted in part and denied in part.

**I. INTRODUCTION**

Lance Green and Anderson Khalid (together, "Named Plaintiffs") worked as servers at a Perry's Steakhouse and Grille ("Perry's") location within the three-year period preceding the filing of this lawsuit in early 2021. (*See* ECF Nos. 1, 13.) Specifically, Green is a resident of Alabama who worked at a Perry's location in

Birmingham, Alabama, and Khalid is a resident of Colorado who worked at a Perry's location in Lone Tree, Colorado. (ECF No. 13 at ¶¶ 16-17, 35-36.) In this lawsuit, they allege that Defendants have violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.,* as amended ("FLSA"), by failing to pay them at the federal minimum wage rate. (*E.g., id.* at ¶ 108). Pursuant to § 216(b) of the FLSA, the Named Plaintiffs filed this collective action on behalf of themselves and other "similarly situated" Perry's servers to recover their "unpaid wages" and "misappropriated tips," among other forms of relief. (ECF No. 13 at ¶ 9); 29 U.S.C. § 216(b).

Whether employees are sufficiently "similarly situated" to proceed as a collective action is judged in two stages: a preliminary or "notice stage" and then a more searching, substantive stage, usually at the conclusion of discovery. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001). The Court has already undertaken the preliminary analysis and conditionally certified a collective class defined as:

> All individuals who worked as servers for Defendants at any of their restaurants located in Colorado, Alabama, North Carolina, or Florida, at any time during the three (3) year period preceding the filing of this lawsuit, and who were paid a direct cash subminimum hourly wage.

("FLSA Collective Class") (ECF No. 91 (citing ECF No. 13 at ¶ 84).) During the subsequent notice period authorized by the Court, roughly 135 individuals opted in to the FLSA Collective Class ("Opt-in Plaintiffs"). (ECF No. 160 at 1; ECF No. 171 at 2); *see also* 29 U.S.C. § 216(b) (requiring aggrieved employees to give consent in writing to become a party plaintiff).

Two years have passed since the Court conditionally certified the FLSA Collective Class. (*See* ECF No. 91.) Now before the Court is the second stage of the

2

certification inquiry, "utilizing a stricter standard of 'similarly situated.'" *Thiessen,* 267 F.3d at 1102-03. "During this 'second stage' analysis, a court reviews several factors, including '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations.'" *Id.* (citation omitted). "[T]he overarching issue is 'whether common questions of law and fact exist that justify representational litigation.'" *Valencia v. Armada Skilled Home Care of NM LLC,* 2023 WL 1993869, at *4 (D.N.M. Feb. 14, 2023) (citation omitted). Plaintiffs bear the burden of establishing they are similarly situated. *Brayman v. KeyPoint Gov't Sols., Inc.,* 595 F. Supp. 3d 983, 992 (D. Colo. 2022), *rev'd on other grounds* 83 F.4th 823 (10th Cir. 2023).

## II. ANALYSIS

### A.   Plaintiffs' Factual & Employment Settings

Here, the parties analyze the various FLSA violations asserted by Plaintiffs as several "subclaims"—namely, a (1) tip pool claim, (2) side work claim, and (3) uniform/equipment claim. (ECF No. 160 at 10; *see generally* ECF No. 171 at 4–17.) As a threshold matter, each of these subclaims implicates the special provisions of the FLSA pertaining to "tipped employees"—that is, "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). While all covered employees must minimally make $7.25 per hour in order for an employer to be in compliance with the FLSA, employers may take advantage of a "tip credit" by paying their tipped employees "a reduced hourly wage of at least $2.13 so long as their workers receive enough tips to bring them to the $7.25 minimum." *Marlow v. New Food Guy, Inc.,* 861 F.3d 1157, 1160 (10th Cir. 2017); 29 U.S.C. § 203(m)(2)(A). "If there are not enough tips [to satisfy the federal minimum

3

wage], the employer must pay the difference; if there are more than enough, the excess tips go to employees."  *Marlow,* 861 F.3d at 1160.

Here, Plaintiffs allege that Defendants paid them a subminimum hourly wage and claimed a tip credit to offset Perry's obligation to pay them at the full minimum wage rate.  (ECF No. 171 at 4.)[1]  As alleged, each of Plaintiffs' "subclaims" in turn relates to whether Defendants were lawfully entitled to claim the tip credit as to all time worked by Plaintiffs.[2]  In this way, Defendants' ability to claim the tip credit is itself arguably "one common defense that applies across the board"—a consideration which weighs in favor of collective adjudication pursuant to the second *Thiessen* factor.  *Nez v. Sw. Glass & Glazing, Inc.,* 2016 WL 10516171, at *4 (D.N.M. Dec. 22, 2016) (finding, by contrast, that the individualized defenses at issue "weigh[ed] against continued certification").

---

[1] As a global argument in favor of decertification, Defendants assert that the payroll data produced in the litigation to date shows that (1) one or more of the Opt-in Plaintiffs were paid above the FLSA minimum wage rate of $7.25 per hour during *some* of the relevant time, and (2) one or more of the Opt-in Plaintiffs were paid above the FLSA minimum wage rate of $7.25 per hour at *all* relevant times.  (ECF No. 160 at 12.)  Neither issue warrants decertification.  However, Defendants' argument suggests that individuals have opted in to the FLSA Collective Class who may not satisfy its definition—that is, they are not individuals who "were paid a direct cash subminimum hourly wage" *under federal law*.  (ECF No. 13 at ¶ 84.)

While the FLSA does not preempt more protective state law, the Court does not understand the FLSA's savings clause to mean that an employer's violation of a more protective state law necessarily constitutes a violation of the FLSA, as Plaintiffs appear to argue.  *See* 29 U.S.C. § 218(a).  Thus, to the extent there are individuals who were, at all relevant times, compensated at a rate above the federal minimum wage but below the state minimum wage rate *before any tip credit was taken*, the Court suspects such individuals might appropriately be included in the Rule 23 class asserting violations of the Colorado Wage Laws, but not the FLSA Collective Class.

The Court declines to make an affirmative ruling on the issue at the decertification stage.  However, to the extent it remains an issue at the summary judgment phase, the parties may re-raise it their dispositive briefing.

[2] The parties disagree as to whether Plaintiffs' uniform/equipment subclaim relates to Defendants' ability to take a tip credit.  (ECF No. 160 at 24 n.5; ECF No. 171 at 15.)  The Court need not resolve that disagreement at this stage.

But Defendants expend most of their Motion arguing that decertification of the FLSA Collective Class is nonetheless warranted because each of Plaintiffs' subclaims involves "threshold liability questions [which] require multiple individualized inquiries." (ECF No. 160 at 6.)  The Court understands these arguments to largely pertain to the first *Thiessen* factor.

Importantly, the first factor does not require Plaintiffs to establish "that the opt-ins are *identically* situated." *Levine v. Vitamin Cottage Nat. Food Mkts., Inc.,* 2023 WL 3648684, at *5 (D. Colo. May 25, 2023) (citation omitted).  Rather, courts permit "FLSA claims to proceed collectively when disparities among the opt-in plaintiffs are 'not material' and are 'outweighed by the similarities between those [p]laintiffs.'" *Id.*  Courts frequently determine whether collective members are sufficiently similarly situated by analyzing whether they were subject to common policies, procedures, and practices. *See Lozoya v. All Phase Landscape Constr., Inc.,* 2014 WL 222104, at *2 (D. Colo. Jan. 21, 2014) ("Where employees are subject to standardized pay policies, collective treatment is appropriate."); *Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (certifying final settlement class where all employees "were subject to the same set of rules and regulations governing almost every aspect of their jobs").

Still, decertification may be appropriate "where the claimants' responsibilities and duties were so varying that it cannot be said they share a factual nexus based on a particular policy or practice." *Blair v. TransAm Trucking, Inc.,* 309 F. Supp. 3d 977, 1001-02 (D. Kan. 2018); *see also Esparsen v. Ridley's Family Mkts., Inc.,* 2022 WL 1092136, at *3 (D. Colo. Apr. 12, 2022) (granting decertification where the evidence

5

supported that, although the employees "had the same title and were subject to the same expectations and policies, their specific duties and responsibilities were far from uniform"). The Court analyzes each of Plaintiffs' subclaims with these principles in mind.

### 1. Tip Pool Subclaim

Plaintiffs' first "subclaim" alleges that Defendants were not entitled to claim a tip credit to satisfy the federal minimum wage because Plaintiffs were required to participate in an unlawful tip pool. (ECF No. 13 at ¶¶ 7, 44, 46-49.)

Generally, for the tip-credit provision to apply, "all tips received by such employee [must] have been retained by the employee." 29 U.S.C. § 203(m)(2)(A). However, there is an exception insofar as the tip-credit provision does not "prohibit the pooling of tips"—subject to two conditions. *Id*. First, the tip pool must only be "among employees who customarily and regularly receive tips." *Id.; see also* 29 C.F.R. § 531.50 ("employees must retain all their tips, although the employer may require those employees to participate in a tip pool with other tipped employees that customarily and regularly receive tips"). Second, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B).

There appears to be no dispute that Perry's had a standardized policy requiring all servers, regardless of location, to contribute 4.5% of their food and alcohol sales to a mandatory tip pool at the end of each shift. (ECF No. 160 at 8; ECF No. 171 at 6; *see also* ECF No. 13 at ¶ 45.) While, as explained above, requiring Plaintiffs to contribute to a tip pool does not in and of itself run afoul of the FLSA, Plaintiffs allege that the tip pool

was unlawful because (1) it included employees who do not customarily and regularly receive tips; (2) Defendants retained portions of the tips Plaintiffs contributed to the tip pool; and (3) Plaintiffs were required to contribute a full 4.5% of their sales "even during shifts when not all support positions were staffed." (ECF No. 171 at 6; *see also* ECF No. 13 at ¶¶ 46-49.)

### a.  *Distribution of Tips to Ineligible Employees*

In support of the allegation that the tip pool was unlawful because Perry's distributed funds from the pool to employees who did not customarily and regularly receive tips, Plaintiffs have appended evidence supporting that all Perry's locations distribute tip pool funds to "indirect service employees," including "Hostesses, Food Runners, Bussers, [and] Bartenders," as a matter of written policy. (ECF No. 172-24 ("Perry's Guide Regarding Tip Credit, Tip Sharing, Tip Pooling," stating also that "Perry's has the right to require an employee to 'tip out' to the rest of the service staff"); *see also* ECF No. 172-25.). Plaintiffs contest the notion that the employees in those positions fit the FLSA's criterion of "customarily and regularly receiv[ing] tips." (ECF No. 171 at 8.) [3]

Defendants argue that decertification is warranted because individualized inquiries will be required to determine whether such employees were in fact ineligible for

---

[3] Defendants argue that Plaintiffs only alleged in the Amended Complaint "that Perry's made tip pool distributions to 'service well bartenders,'" so they cannot now argue that Perry's tip pool arrangement was unlawful because it included other positions. (ECF No. 160 at 16 (citing ECF No. 13 at ¶ 71).) The Court rejects the invitation to construe Plaintiffs' claim so narrowly. Plaintiffs broadly alleges that Perry's tip pool arrangement was unlawful "[b]ecause Defendants did not fully redistribute all of Plaintiffs and the FLSA Collective Members' tips from the tip pool solely among other customarily and regularly tipped employees" (ECF No. 13 at ¶ 49), and they minimally identified "bartenders, service well bartenders, hosts, and server assistants (i.e., food runners and bussers)" as positions "[i]ncluded in the tip pool" (*id.* at ¶ 69). Thus, the Court finds that Defendants had fair notice of this allegation.

inclusion in the tip pool based on their activities over the course of a workweek.  (ECF No. 160 at 16-17 (citing *Montano v. Montrose Rest. Assoc.,* 800 F.3d 186, 191–93 (5th Cir. 2015) (inquiry into whether employees in a given job "customarily and regularly receive tips" turns on "the extent of an employee's customer interaction" and "whether the employee is engaging in customer service functions"))); *see also Giuffre v. Marys Lake Lodge, LLC,* 2012 WL 4478806, at *2 (D. Colo. Sept. 28, 2012) (similarly "focus[ing] on the position's level of interaction with customers").

For example, Defendants argue that "employees who worked as a service well bartender were at times stationed in the main bar area of the restaurant, where they were visible to and had an opportunity to interact with customers," which would in turn "make them eligible for tip pool distributions" during those times.  (ECF No. 160 at 17-18.)  Thus, according to Defendants, "*where* service well bartenders worked" will require an "individualized determination."  (*Id.* at 18.)

Still, Defendants do not explain why variations in where service well bartenders could be stationed precludes adjudicating, on a collective basis, whether service well bartenders as a group qualify as employees who "customarily and regularly receive tips."  *See Paschal v. Perry's Rests., Ltd.,* 2023 WL 2784864, at *4 (W.D. Tex. Apr. 4, 2023) ("Defendants point to no evidence of individualized differences in the busser and food runner positions that would prohibit determining whether these employees, as a group, 'customarily and regularly received tips' and thus are valid tip pool participants."), *report and recommendation adopted* 2023 WL 3483902 (W.D. Tex. May 16, 2023).  To the contrary, Plaintiffs append evidence tending to support the notion that bussers, food runners, hosts, and bartenders had standardized duties, regardless of the Perry's

8

location at which they worked.  (*See, e.g.,* ECF No. 172-10.)

The other issues that Defendants identify, such as variations in the amount of tip pool distributions employees in these "indirect service" roles received from week-to-week, relate to damages and do not preclude adjudication on a collective basis.  *See, e.g., Brayman,* 595 F.Supp.3d at 994 (reasoning in unpaid overtime case that "potential differences in each Plaintiff's claim for potential damages" does not "require decertification of this action"); *Lozoya,* 2014 WL 222104, at *3 ("Factual defenses in an FLSA collective action will necessarily be individualized any time employees worked different schedules.").

Thus, the Court concludes that Plaintiffs may proceed collectively on their claim that the tip pool was unlawful because it included employees who do not "customarily and regularly receive tips"—that is, the "indirect service employees" identified in Perry's written tip pooling policy.

        b.    *Defendants' Retention of Tips*

In the Amended Complaint, Plaintiffs also asserted that the tip pool was unlawful because Defendants did not always fully redistribute the collected funds, suggesting in turn that Perry's unlawfully retained a portion of Defendants' tips.  (ECF No. 13 at ¶¶ 48-49.)  Defendants deny that this occurred.  (ECF No. 160 at 15.)

While mindful that courts place the ultimate burden on the employer "to show the validity of its tip pool," *Su v. Los Cocos Mex. Rest., Inc.,* 2023 WL 8005032, at *3 (D. Kan. Nov. 17, 2023), Plaintiffs wholly fail to argue Defendants' unlawful retention of tips is a continued basis for their tip pool subclaim in their response to the Motion.  (*See generally* ECF No. 171 at 4–8); *see also Paschal,* 2023 WL 3483902, at *1 (W.D. Tex. May 16, 2023) (denying certification "as to Plaintiffs' claim that Perry's failed to fully

9

distribute tip pool funds" based on magistrate judge's finding that "Plaintiffs offer[ed] no evidence that Defendants retained or otherwise failed to distribute tip pool funds" nor had they "established such a policy"). The Court thus considers Plaintiffs to have abandoned this aspect of their collective claim and grants the Motion insofar as it relates to Plaintiffs' claim that Defendants unlawfully retained tip pool funds. (*See* ECF No. 13 at ¶¶ 48–49, 86); *cf. Tanner v. Tpusa, Inc.,* 2015 WL 6940118, at *2 (M.D. Ga. Nov. 9, 2015) (finding Plaintiffs abandoned their minimum wage claim where they did not make arguments in support of it in response to motion to decertify).

    c.  *Distribution of Tips to Vacant Positions*

Finally, the Court addresses Plaintiffs' allegation that the tip pool was unlawful because "tip pool funds were distributed to employees that were not staff for a particular shift—absent/off hour employees." (ECF No. 171 at 6.) In the Amended Complaint, Plaintiffs also frame this claim as concerning "Defendants' pattern and practice of retaining tips from the tip pool for vacant positions . . . ." (ECF No. 13 at ¶ 47.) As best the Court can gather, Plaintiffs are asserting an FLSA violation has occurred because (1) Perry's collected tips for all support positions regardless of whether they were staffed during a given shift, and Perry's in turn unlawfully retained tip funds correlating with unstaffed positions; (2) Perry's actually distributed tip pool funds to employees who did not work during a correlating shift, even though "absent employees" would not qualify as those who "customarily and regularly receive tips;" or (3) perhaps some combination of the foregoing. (*See also* ECF No. 160 at 13.)

Whatever the precise theory of liability, the Court finds that Plaintiffs have not met their burden to show they are sufficiently similarly situated as to this claim to proceed on a collective basis. Plaintiffs do not rebut Defendants' argument that the

10

claim would require highly individualized inquiries with any argument or evidence of, for example, a common practice across Perry's relevant restaurant locations of collecting tip pool funds on behalf of unstaffed positions and/or distributing those funds to employees who did not work during a correlating shift.  (*See* ECF No. 171 at 6.)  Thus, the Court will also grant the Motion as to Plaintiffs' claim concerning vacant or "absent/off hour employees."

To be clear, based on the Court's findings above, the Opt-in Plaintiffs' claims that the tip pool was unlawful because (1) Defendants retained a portion of Plaintiffs' tips and/or (2) Defendants included unstaffed or absent employees in the tip pool are dismissed without prejudice.  However, this ruling does not preclude the Named Plaintiffs from proceeding on such claims on an individual basis.  *See Green v. Harbor Freight Tools USA, Inc.,* 888 F. Supp. 2d 1088, 1094 (D. Kan. 2012) ("If the claimants are not similarly situated, the district court decertifies, [] the opt-in plaintiffs are dismissed without prejudice, and [t]he class representatives—*i.e.,* the original plaintiffs—proceed to trial on their individual claims."  (citation omitted) (alterations in original)).

### 2. Side Work Subclaim

Plaintiffs second "subclaim" alleges that Defendants violated the FLSA by taking the tip credit for time Plaintiffs were required to spend performing (1) non-tipped duties *unrelated* to their occupation as a server, and (2) non-tipped duties *related* to their occupation as a server but exceeding 20% of their overall time worked during a given workweek.  (ECF No. 13 at ¶¶ 44, 52–55.).

As discussed at length in the Court's Order Denying Defendants' Motion for Partial Summary Judgment (ECF No. 203), the Court will apply the 1967 Dual Jobs

Regulation and 80/20 Rule as embodied in the United States Department of Labor's ("DOL") Field Operations Handbook ("FOH") to Plaintiffs' side work subclaim. To reiterate, the Dual Jobs Regulation explains that:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $[30] a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses . . . Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e) (1967). The FOH elaborates that the Dual Jobs Regulation "permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (*i.e.,* maintenance and preparatory closing activities)," "where the facts indicate that . . . tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties"—*i.e.,* the "80/20 Rule." FOH 30d00(e) (1988). Taken together, employers may not take a tip credit as to time spent on non-tipped *unrelated* work but may take a tip credit for non-tipped *related* work, so long as it does not exceed 20% of the tipped employee's time worked each week.

Plaintiffs direct the Court to evidence showing that every Perry's location ostensibly uses the same "Server Checklist," including a standardized list of opening and closing side work assignments. (ECF No. 172-10; ECF No. 172-13.) In this way,

12

the Court is persuaded that a jury can determine, on a collective basis, whether each of these tasks is related or unrelated to the server occupation.  Plaintiffs also direct the Court to evidence supporting that, across the relevant Perry's locations, servers spent notable time on these side work assignments at the beginning and end of their shifts. (*See, e.g.,* ECF No. 172-33 (Khalid Dep.) at 138:21–24 (testifying he spent "an hour before a shift" performing side work); ECF No. 172-32 (Green Dep.) at 118:11–23 (testifying "it was not unusual to spend two to three hours after [a] shift" and "an hour to an hour and a half before" a shift on side work); ECF No. 172-26 (manager of Alabama location describing in email that "[i]t is common for [servers] to be here an hour before the shift and 1.5 to 2 hours after close"); ECF No. 172-27 (manager of North Carolina location describing in email that there's "a lot of [side] work to do at the end of a busy shift . . . could be an hour and a half of work").)

Still, Defendants argue individualized inquiries will be required, which makes proceeding as a collective on this claim impracticable, primarily because the specific side work tasks servers are required to perform vary day-to-day.  (ECF No. 160 at 21.) The Court agrees with Plaintiffs, however, that this does not preclude proceeding as a collective.  Complete identity of circumstances is not required.  *See Berger v. Perry's Steakhouse of Ill., LLC,* 2020 WL 5848374, at *5 (N.D. Ill. Oct. 1, 2020) (denying motion to decertify based on "Defendants' arguments that individualized shift lengths, changing responsibilities, and the speed at which any one server performed his duties preclude certification"); *McDonnell v. KRG Kings LLC,* 2022 WL 3681672, at *4 (W.D. Pa. Aug. 25, 2022) (rejecting argument that final certification should be denied where "evidence . . . show[ed] substantial overlap between the side-work tasks servers were required to

13

perform restaurant to restaurant," including "task-lists from a dozen of Defendants' restaurants setting forth substantially similar sets of side-work duties").

Thus, the Motion is denied as to Plaintiffs' side work subclaim.

### 3. Uniform/Equipment Subclaim

Finally, with respect to the "uniform/equipment subclaim," Plaintiffs allege that Defendants violated the FLSA by requiring them "to purchase various items and incur other business expenses" (ECF No. 13 at ¶¶ 7, 44), including "pens, wine keys, pepper mills, crumbers . . . , and other tools" (*id.* at ¶ 50), as well as their uniforms. (ECF No. 171 at 15.)

The FLSA defines "[w]age" to include "the reasonable cost . . . to the employer of furnishing such employee with board, lodging or other facilities, if such board, lodging or other facilities are customarily furnished by such employer to his employees." 29 U.S.C. § 203(m)(1). However, an applicable regulation further explains that "[t]he cost of furnishing 'facilities' . . . primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages." 29 C.F.R. § 531.3(d)(1). The DOL's Wage and Hour Division ("WHD") has identified "[t]ools of the trade and other materials and services incidental to carrying on the employer's business" and "the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform" as "facilities" which are "primarily for the benefit or convenience of the employer." *Id.* at § 531.3(d)(2). In other words, an employer may not include "[t]ools of the trade" or "the cost of [required] uniforms" in the computation of an employee's wage.

Plaintiffs offer evidence supporting the notion that Perry's servers had a required uniform which, in addition to their attire, included certain "additional items"—namely, a

14

"[w]ait book, wine key, non-logo lighters, [four] non-logo black click pens, crumber, peppermill holster and pepper mill." (ECF No. 172-9 at 5.) Plaintiffs also provide a representative sample of receipts demonstrating that servers directly paid Perry's restaurant locations in Lone Tree, Raleigh, and Birmingham for crumbers. (ECF No. 172-23.) And they also append a "Uniform Deduction Authorization for Payroll (Employee)" form evidencing that Perry's deducts the component costs of its staff's uniforms from their paycheck. (ECF No. 172-21.)

Defendants argue the uniform/equipment subclaim should nonetheless be decertified because Plaintiffs differ as to the specific items for which they allege to have improperly incurred costs and the manner in which they incurred those costs, *e.g.*, through a payroll deduction versus a direct payment to Perry's. (ECF No. 160 at 24–25.) The Court finds, however, that these arguments are at most relevant to the extent of each Plaintiffs' damages, and do not preclude adjudication of the single, uniform question presented here: whether the uniform and other "additional items" Plaintiffs were allegedly required to purchase were "facilities" "primarily for the benefit and convenience of" the employer. *Cf. Paschal,* 2023 WL 2784864, at *7 (rejecting Defendants' dispute regarding "the frequency of uniform and equipment deductions" as a reason to preclude collective adjudication of policy).

Moreover, Defendants' argument that there are Opt-in Plaintiffs who "do not complain that they incurred costs for any of these items" does not warrant decertification but instead suggests that subclasses could be appropriate. (ECF No. 160 at 24); *Pruess,* 2024 WL 3844965, at *18 (collecting cases supporting the notion that, rather than decertifying an FLSA collective, a district court may narrow and/or subdivide an

15

FLSA collective class into subclasses at its discretion). At this time, however, it does not appear that substantial overbreadth or variance within the FLSA Collective Class warrants subdividing it into subclasses.

For these reasons, the Court denies the Motion as to the "uniform/equipment subclaim."

### B. Defenses and Other Fairness and Procedural Considerations

Defendants do not separately analyze the second and third *Thiessen* factors. Instead, they argue both remaining factors "embrace PRL's defense that this Court does not have personal jurisdiction over it to hear the claims of the Opt-in Plaintiffs," such that it "should find that this case is not maintainable as a collective action by, and dismiss the claims of, all of the Opt-in Plaintiffs who worked at a Perry's in Alabama, Florida, and North Carolina." (ECF No. 160 at 26.)

Defendants' personal jurisdiction argument is based on the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,* 582 U.S. 255 (2017). In that case, a group of plaintiffs brought a mass tort action against the defendant pharmaceutical company in California state court, alleging claims arising under California law. *Id.* at 259. The California Supreme Court concluded general jurisdiction was clearly lacking under *Daimler,* but a narrow majority reasoned the pharmaceutical company's contact with California permitted the exercise of specific jurisdiction over the nonresidents' claims. *Id.* at 260. The Supreme Court reversed, reasoning the California Supreme Court had not "identif[ied] any adequate link between the State and the nonresidents' claims"—that is, "a connection between the forum and the specific claims at issue." *Id.* at 264–65.

Since that time, federal courts have split on the issue of whether *Bristol-Myers*

16

*Squibb* extends to FLSA collective actions.  *See, e.g., Fischer v. Fed. Express Corp.,* 42 F.4th 366 (3d Cir. 2022) (extending *Bristol-Myers* to FLSA collective actions and requiring each opt-in plaintiff to establish specific jurisdiction over the defendant); *cf., e.g., Waters v. Day & Zimmerman NPS, Inc.,* 23 F.4th 84 (1st Cir. 2022) (concluding that *Bristol-Myers* does not apply to FLSA collective actions).  But the only court to have considered the issue in this District has taken the latter view, concluding that the personal jurisdiction inquiry in an FLSA collective action turns on the well-settled principle "that the original plaintiff in a collective action under the FLSA dictates a district court's analysis of personal jurisdiction."  *Warren v. MBI Energy Servs., Inc.,* 2020 WL 937420, at *7 (D. Colo. Feb. 25, 2020) (citation omitted); *see also Dahl v. Petroplex Acidizing, Inc.,* 2024 WL 22087, at *8 (D.N.M. Jan. 2, 2024) (adopting the reasoning of *Warren*).

This Court similarly finds the reasoning of the *Warren* court persuasive and concludes that *Bristol-Myers* does not "divest[] [the Court] of specific jurisdiction over the claims of [the Opt-In Plaintiffs]."  *Warren,* 2020 WL 937420, at *6.  Thus, the Court considers whether it has personal jurisdiction over the claims of the Named Plaintiffs.  Here, the Court found long ago that PRL waived any objection to this Court's exercise of personal jurisdiction by failing to object via a Rule 12(b)(2) motion.  (ECF No. 59 at 5-6.)  Indeed, Defendants appear to concede as much in their Motion.  (*See* ECF No. 160 at 30 n.8 ("PRL acknowledges that it answered the complaint filed by named Plaintiff Green, who worked in Alabama.  So for that reason alone, dismissal of *his* claims on lack-of-personal-jurisdiction grounds is not warranted.").)[4]

---

[4] At that time, the Court had not yet conditionally certified the FLSA Collective Class. (*See* ECF No. 91.)  Courts have generally been reluctant to find waiver of personal jurisdiction

17

Defendants have not identified any other individualized defenses nor procedural and fairness considerations warranting decertification. Thus, the Court finds the second and third *Thiessen* factors weigh in favor of permitting Plaintiffs to proceed as a collective, subject to the limitations on Plaintiffs' tip pool subclaim discussed in Section II.A.1 *supra*.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Decertify the FLSA Collective Action (ECF No. 160) is GRANTED IN PART and DENIED IN PART as follows:

1. The Motion is GRANTED with respect to Plaintiffs' claims that Defendants violated the FLSA insofar as they unlawfully retained funds from the tip pool and/or improperly included "absent/off hour employees" in the tip pool. The Opt-in Plaintiffs' claims—but not the Named Plaintiffs' claims—on the same grounds are accordingly DISMISSED without prejudice.

2. The Motion is DENIED as to all other claims.

---

as to the claims of plaintiffs who have not yet joined the case. *See, e.g., Fortney v. Walmart Inc.,* 2020 WL 7237281, at *2 (S.D. Ohio Dec. 8, 2020). However, given that Named Plaintiff Green has been an out-of-state plaintiff in this litigation since its inception, as Defendants note, the Court is skeptical that Defendants' waiver of personal jurisdiction should not also extend to the out-of-state Opt-in Plaintiffs' claims, too—even separate and apart from Defendants' arguments concerning *Bristol-Myers*. *Compare with Chavira v. OS Rest. Servs., LLC,* 2019 WL 4769101, at *2 (D. Mass. Sept. 30, 2019) (personal jurisdiction defense was *not* waived by defendants because "when they filed their [earlier] motion to dismiss . . . the only plaintiff asserting claims was employed in [the forum state]").

Dated this 17th day of December, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge