**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 21-cv-0023-WJM-NRN

LANCE GREEN, and
ANDERSON KHALID, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

PERRY'S RESTAURANTS LTD, and
PERRY'S STEAKHOUSE OF COLORADO, LLC, collectively d/b/a PERRY'S
STEAKHOUSE AND GRILLE,

      Defendants.

---

**ORDER GRANTING OPPOSED MOTION FOR**
**CLASS CERTIFICATION PURSUANT TO RULE 23**

---

      Before the Court is Plaintiff Anderson Khalid's, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), Opposed Motion for Class Certification Pursuant to Rule 23 ("Motion") (ECF No. 162). Defendants Perry's Restaurants LTD ("PRL") and Perry's Steakhouse of Colorado, LLC's ("PSC") (jointly, "Defendants") filed a response. (ECF No. 170). Plaintiffs filed a reply. (ECF No. 186.)

      For the following reasons, the Motion is granted.

## I. INTRODUCTION

      Anderson Khalid ("Khalid" or "Named Plaintiff") worked as a server at the Perry's Steakhouse and Grille ("Perry's") location in Lone Tree, Colorado ("Colorado Location") from approximately February 2017 to January 2021. (*See* ECF No. 13 at ¶ 36.) In addition to the Fair Labor Standards Act ("FLSA") violations Khalid asserts alongside

Plaintiff Lance Green, Khalid alleges that Defendants violated the Colorado Wage Claim

Act ("CWCA"), C.R.S. § 8-4-101, *et seq.,* as implemented by the Colorado Overtime and

Minimum Pay Standards Order ("COMPS Order") (together, "Colorado Wage Laws"), by

failing to pay him minimum wage.  (*See generally* ECF No. 13); *see also Cusimano v.*

*Metro Auto, Inc.,* 860 P.2d 532, 534 (Colo. App. 1992) (describing the CWCA's

"beneficent purpose" as to "assur[e] timely payment of wages and provid[e] adequate

judicial relief when wages are not paid") (citation omitted); *Brennan v. Broadmoor Hotel*

*Inc.,* 535 P.3d 1016, 1018 (Colo. App. 2023) (noting the COMPS Order is a regulatory

enactment which "implements" the CWA).

Khalid asserts his Colorado Wage Law claims are typical of other servers who

worked at the Colorado Location in the same approximate time frame and who were,

thus, also subject to "Defendants' compensation practices and policies."  (ECF No. 13 at

¶ 15.)  Khalid seeks to certify a class under Federal Rule of Civil Procedure 23 defined

as:

> All of Defendants' current and former employees who
> worked as servers in at least one week in Colorado within
> the three (3) years preceding the filing of this lawsuit and
> who were paid a subminimum hourly wage pursuant to
> Colorado Wage Law.

("Proposed Colorado Class," each a "Proposed Class Member") (ECF No. 162 at 2.)

To obtain certification of the Proposed Colorado Class, Khalid must show that the

four "threshold requirements of Rule 23(a) are satisfied"—namely, (1) numerosity, (2)

commonality, (3) typicality, and (4) adequacy of representation—"and that one of the

three provisions of Rule 23(b) is satisfied."  *Brayman v. Keypoint Gov't Sols., Inc.,* 83

F.4th 823, 836 (10th Cir. 2023); Fed. R. Civ. P. 23.  Khalid relies on Rule 23(b)(3),

which requires the Court to find "that the common questions of law or fact common to

class members *predominate* over any questions affecting only individual members, and
that a class action is *superior* to other available methods for fairly and efficiently
adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (emphasis added).  In other
words, Rule 23(b)(3) also requires Khalid to make "a showing of predominance and
superiority."  *Brayman,* 83 F.4th at 837.

## II. ANALYSIS

### A.    Commonality and Predominance

Defendants dispute only that Rule 23's commonality and predominance
requirements are satisfied with respect to each of the claims asserted by Plaintiffs.
(*See* ECF No. 170 at 9.)  The Court thus begins its analysis with those disputed
requisites.

#### 1.    Applicable Standard

As its label suggests, commonality requires that there are "questions of law or
fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A plaintiff must "do more than
merely identify 'a common contention'; instead, that 'common contention . . . must be of
such a nature that it is capable of classwide resolution—which means that
determination of its truth or falsity will resolve an issue that is central to the validity of
each one of the claims in one stroke.'"  *Naylor Farms, Inc. v. Chaparral Energy, LLC,*
923 F.3d 779, 789 (10th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S.
338, 349 (2011)).  Put differently, "the focus of Rule 23(a)(2)'s commonality requirement
is not so much on whether there exist common *questions,* but rather on 'the capacity of
a classwide proceeding to generate common *answers* apt to drive the resolution of the
litigation.'"  *Naylor Farms,* 923 F.3d at 789 (quoting *Wal-Mart Stores, Inc.,* 564 U.S. at
350).  "The existence of a single common question is sufficient to meet the commonality

requirement." *Brayman,* 83 F.4th at 837.

Predominance, on the other hand, "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Broad & Cassel,* 773 F.3d 1076, 1087 (10th Cir. 2014) (internal quotation marks omitted). "[L]ike commonality, predominance must be satisfied 'through evidentiary proof.'" *Brayman,* 83 F.4th at 838 (quoting *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013)). Nonetheless, it is "'more demanding than[]' Rule 23(a)(2)'s commonality requirement." *Naylor Farms,* 923 F.3d at 789 (quoting *Comcast Corp. v. Behrend,* 569 U.S. 27, 34 (2013)).

To satisfy the predominance requirement, Plaintiffs must "show that common questions subject to generalized, classwide proof *predominate* over individual questions." *CGC Holding Co.,* 773 F.3d at 1087. This entails a two-step analysis. *Brayman,* 83 F.4th at 828. First, a district court must "*characterize* the issues in the case as common or not." *CGC Holding Co.,* 773 F.3d at 1087. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or the issue is susceptible to generalized, class[ ] wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo,* 136 S. Ct. 1036, 1045 (2016) (citation omitted).

Second, the district court must "*weigh* which issues predominate." *CGC Holding Co.,* 773 F.3d at 1087 (predominance "requires us to survey the elements of the class's . . . claims to consider (1) which of those elements are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not").

Thus, while demanding, Rule 23(b)(3) does not require that Plaintiffs must show "that all of the elements of the claim entail questions of fact and law that are common to the class" or "that the answers to those common questions [are] dispositive" of the claim. *Id*. "[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there are individual issues, such as damages, that must be tried separately." *Naylor Farms,* 923 F.3d at 789.

When analyzed in conjunction, "'Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions.'" *Brayman,* 83 F.4th at 838 (quoting *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 609 (1997)). Thus, the Court will focus its claim-specific analysis on predominance. *Cf. Brayman,* 83 F.4th at 838 (adopting similar approach in case where only commonality and predominance were contested).

### 2.    Claim-by-Claim Analysis

As in their Motion to Decertify (ECF No. 160), Defendants analyze the Colorado Wage Law violations asserted by Plaintiffs as four "subclaims"—namely, (1) a tip pool claim, (2) a side work claim, (3) a uniform/equipment claim, and (2) a meal break and rest period claim. (ECF No. 170 at 5); *see also Brayman,* 83 F.4th at 837–41 (undertaking claim-by-claim analysis).

As a threshold matter, Plaintiffs' "subclaims" implicate the Colorado Wage Laws' special provisions concerning the compensation of "tipped employees"—that is, "any employee engaged in an occupation in which s/he customarily and regularly receives more than $30 per month in tips." COMPS Order #38, 7 CCR 1103-1, Rule 1.10

(effective Jan. 1, 2022).[1]  As a general rule, the COMPS Order requires employers to

pay their employees "not less than the Colorado minimum wage, as specified for the

applicable year in the PAY CALC Order [Publication And Yearly Calculation of Adjusted

Labor Compensation Order]."  *Id.* at Rule 3.1.  But like the FLSA, the COMPS Order

also includes a "tip credit" provision, which provides:

> A tip credit no greater than $3.02 per hour may be used to
> offset cash wages for employers of tipped employees.  An
> employer must pay a cash wage of at least the amount
> specified for the applicable year in the PAY CALC Order if it
> claims a tip credit against its minimum hourly wage
> obligations; if an employee's tips combined with the cash
> wage of at least the amount specified for the applicable year
> in the PAY CALC Order do not equal the minimum hourly
> wage, the employer must make up the difference in cash
> wages.

*Id.* at Rule 6.2.3; *see also, e.g.,* PAY CALC Order, 7 CCR 1103–14 (2022) (establishing

$12.56 minimum hourly wage, and $9.54 minimum hourly wage for "tipped employees").

Here, Plaintiffs allege that Defendants paid all of its Colorado servers a

subminimum hourly wage and claimed a tip credit to offset Perry's obligation to pay

them at the full state minimum wage rate.  (ECF No. 162 at 3; *see also, e.g.,* ECF No.

13 at ¶¶ 13, 60, 62–65.)  In turn, Plaintiffs assert that each of their subclaims relates to a

Colorado Wage Law violation that should have precluded Defendants from claiming a

tip credit to satisfy the state minimum wage rate.  (ECF No. 13 at ¶¶ 66–68; *see also*

ECF No. 162 at 10 ("Plaintiffs claim that Defendants nullified their allowable use of the

---

[1] For the purposes of this Order, the Court cites to (1) COMPS Order #38, effective January 2022 and, where applicable, (2) the current versions of the Colorado Department of Labor and Employment's ("CDLE") relevant Interpretive Notice and Formal Opinions ("INFOs"). In their forthcoming dispositive motions, however, it would aid the Court's analysis for the parties to take a clear position as to which iteration of the applicable laws, regulations, and administrative guidance governs Plaintiffs' claims in this case, particularly to the extent there are material differences between them.

tip credit because they committed the following violations . . . .").)  In this way,
Defendants' ability to claim the tip credit is itself a common question that permeates
Plaintiffs' claims.  *Cf. Hicks v. T.L. Cannon Corp.,* 35 F. Supp. 3d 329, 355 (W.D.N.Y.
2014) (finding "tip credit claims predominate" and collecting cases holding similarly);
*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 253 (2d Cir. 2011)
(finding commonality satisfied where plaintiffs' class claims "all derive from the same
compensation policies and tipping practices").

Nonetheless, Defendants argue that still other "merits questions essential to
[Plaintiffs' subclaims] require individualized inquiries," which should preclude Plaintiffs
from "proceed[ing] on a class basis."  (ECF No. 170 at 5.)

     a.   *Tip Pool Subclaim*

As under the FLSA, the Colorado Wage Laws permit employers to require
"employees to share or allocate . . . tips or gratuities on a pre-established basis"—*i.e.,* to
participate in a tip pool—so long as the tip pool satisfies certain conditions.  COMPS
Order #38, 7 CCR 1103-1 at Rule 1.10; *see also* C.R.S. § 8-4-103(6).  Plaintiffs' assert
that Perry's violated the Colorado Wage Laws' conditions for tip pooling because (1) the
tip pool included employees who do not customarily and regularly receive tips; (2)
Defendants used funds from the tip pool to pay employees' direct wages; and (3)
Perry's did not inform customers that tips were being pooled among the restaurant's
employees.  (ECF No. 13 at ¶¶ 13, 59–76.)

There is no dispute that Perry's had a policy requiring the servers working at its
Colorado Location to contribute 4.5% of their food and alcohol sales to a mandatory tip
pool at the end of each shift.  (ECF No. 162-10; ECF No. 13 at ¶ 69; ECF No. 170 at 6.)
Again, this single, common policy itself weighs in favor of finding that class-wide issues

predominate over individual issues.  *See, e.g., Shahriar v. Smith & Wollensky Rest.
Grp., Inc.,* 659 F.3d 234, 253 (2d Cir. 2011) (finding predominance satisfied where
plaintiffs alleged "all servers were subject to [a] uniform tip-sharing or tip-pooling
system"); *Williams-Green v. J. Alexander's Rests., Inc.,* 277 F.R.D. 374, 383 (N.D. Ill.
2011) (finding commonality and predominance satisfied because the "controlling
substantive issue is the propriety of J. Alexander's tip pool"); *Starr v. Chicago Cut
Steakhouse, LLC,* 75 F. Supp. 3d 859, 874–75 (N.D. Ill. 2014) (finding predominance
requirement met in part because, "if [restaurant] improperly operated the tip pool, it
would not be eligible to receive the tip credit in its entirety").

But, Defendants argue the specific reasons Plaintiffs cite for why the tip pool was
unlawful require individualized inquiries, which militate against permitting the claim to
proceed on a class basis.

(i)    Inclusion of Ineligible Employees in Tip Pool[2]

Under the COMPS Order, if tip pool funds are shared with employees who do

---

[2] In their response, Defendants separately address "Khalid's 'Service Well Bartender' Allegation" and an "Unpleaded" "Certain-Tasks-Made-Tip-Pool-Recipients-Ineligible Claim." (ECF No. 170 at 16-17.)  In the Court's view, both relate to the same issue—that is, whether funds from the tip pool were distributed to employees who do not customarily and regularly receive tips.

For the same reasons articulated in the Court's Order on Defendants' Motion to Decertify, the Court declines to limit Plaintiffs' claim to concerning only the improper inclusion of "service well bartenders" in the tip pool.  (ECF No. 205 at 7 n.3.)

And the Court similarly rejects Defendants' contention that the "Certain-Tasks-Made-Tip-Pool-Recipients-Ineligible" issue is an entirely new unpleaded claim.  Rather, Plaintiffs' identification of certain tasks performed by employees who shared in the tip pool appears to merely be some evidence Plaintiffs are offering to support their position that those employees do not qualify as those who "customarily and regularly receive tips."  *See Montano v. Montrose Rest. Assoc.,* 800 F.3d 186, 191-93 (5th Cir. 2013) (in FLSA context, inquiry into whether employees in a given job "customarily and regularly receive tips" turns on "the extent of an employee's customer interaction").

"not customarily and regularly receive tips, such as management or food preparers," it "shall nullify allowable tip credits towards the minimum wage."  COMPS Order #38, 7 CCR 1103-1 at Rule 1.10.  Here, Plaintiffs allege that servers at the Colorado Location "were required to contribute to the same tip-pool that was distributed to employees who were not engaged in duties that are customarily and regularly tipped."  (ECF No. 162 at 14.)

Plaintiffs direct the Court to a relevant written policy, "Guide Regarding Tip Credit, Tip Sharing, Tip Pooling," which states that tip pool funds are distributed to "Hostesses, Food Runners, Bussers, Bartenders."  (ECF No. 162-10; *see also* ECF No. 13 at ¶ 69.)  The written policy is undisputed by Defendants.  (ECF No. 170 at 6.) Plaintiffs, however, contest whether employees in these positions "customarily and regularly receive tips," noting they perform non-tipped tasks like cleaning the restroom and the building exterior.  (ECF No. 162 at 14.)

Defendants argue this allegation will require a fact-intensive inquiry into whether, for example, "during each workweek in which a class member worked as a server, a 'service well bartender' worked and overlapped with the class member."  (ECF No. 170 at 160.)  Next, Defendants assert that "one must examine whether the service well bartender received a tip pool distribution" because they "were not always included in a tip pool."  (*Id.*)  However, the issues Defendants identify largely pertain to damages and do not predominate over the central inquiry into the legality of Perry's practice of including allegedly ineligible employees in the tip pool.  *See, e.g., Felps v. Mewbourne Oil Co.,* 336 F.R.D. 664, 676 (D.N.M. 2020) ("[W]here . . . the plaintiff's theory of liability is predicated on the blanket application of policies and practices to an entire class,

courts have uniformly rejected the notion that predominance is defeated by the specter of individualized inquiries into the numbers of hours worked by each class member.").

Defendants also argue that individualized inquiries will be necessary to determine whether the activities performed by hosts, bussers, food runners, and bartenders in any given week entailed sufficient "customer interaction" to make them eligible to share in the tip pool.  *See Montano v. Montrose Rest. Assoc.,* 800 F.3d 186, 191-93 (5th Cir. 2013) (in FLSA context, inquiry into whether employees in a given job "customarily and regularly receive tips" turns on "the extent of an employee's customer interaction").  Defendants note, for example, that service well bartenders were at times stationed in the main bar area of the restaurant "where they were visible to, and had the opportunity to, interact with customers."  (ECF No. 170 at 16.)  Defendants' argument ostensibly means that, when stationed in the main bar area, service well bartenders are likely eligible for a tip pool distribution but perhaps not when they are stationed elsewhere.

This assertion does not alone show, however, that the activities performed by each service well bartender employed at the Colorado Location were so varied that it would be impracticable to determine whether, as a group, they "customarily and regularly" received tips.  To the contrary, it appears to the Court that the jury could resolve that question on a classwide basis based on the list of standardized duties Plaintiffs have appended to their Motion.  (ECF No. 162-19 (including checklists for opening and closing assignments of various positions)); *cf. Schear v. Food Scope Am., Inc.,* 297 F.R.D. 114, 123 (S.D.N.Y. 2014) (finding commonality and predominance satisfied as to claim tip pool included ineligible employees because it "depend[ed] upon

a common contention, namely, that the sushi chefs, expediters, and stockers are not eligible for inclusion in the tip pool" under New York wage law, and if plaintiffs succeeded in showing ineligible employees received tips from the tip pool, then each class member "will likely prevail"); *Starr v. Chicago Cut Steakhouse, LLC,* 675 F. Supp. 3d 859, 872 (N.D. Ill. 2014) (finding commonality and predominance satisfied as to claim that restaurant "improperly operated the tip pool by . . . including ineligible employees in the tip pool").

The Court thus concludes that common questions predominate over any individualized inquiries relevant to Plaintiffs' claim that the tip pool was unlawful because funds from the pool were distributed to ineligible employees.

### (ii)    Use of Tip Pool to Pay Direct Wages

The Colorado Department of Labor and Employment ("CDLE") has issued interpretive guidance elaborating on the protections afforded to tipped employees pursuant to Colorado law.  *See* Interpretive Notice and Formal Opinion ("INFO") #3C (last updated Dec. 12, 2023).  As relevant here, INFO #3C explains that an employer may not use tips "to pay employees' direct wages, rather than paying tips to those tipped employees."  *Id.* at 4.  If an employer does so, "they can't apply a tip credit or tip sharing, and must pay full minimum wage as well as return any shared tips."  *Id.*

Here, Plaintiffs allege that Defendants paid "bartenders, service well bartenders, hosts, and server assistants (*i.e.* runners and bussers)" "a flat hourly wage regardless of the amount of tips that [Plaintiffs] contributed to the tip pool."  (ECF No. 13 at ¶¶ 69–70.) As a result, Plaintiffs allege that Defendants used the tips from the tip pool to subsidize the direct wages of employees in those positions.  (ECF No. 162 at 4 ("[T]he tip pool was literally used to ensure that non-server staff received a guaranteed hourly wage, as

opposed to the intended purpose of a 'tip pool,' which is to ensure that all employees
benefit equally from larger tips . . . .").)  Indeed, Perry's written policy concerning tip
sharing appears to describe how it uses tip pool funds "to make up the difference"
between the "base wage" of "Hostesses, Food Runners, Bussers, Bartenders" and "their
agreed to final wage."  (ECF No. 162-10; *see also* ECF No. 162-14 at 10.)

 Defendants argue this claim is not appropriate for classwide adjudication
primarily because it will require weekly determinations as to certain amounts, such as
(1) whether each class member contributed to the tip pool in a given week and how
much they individually contributed; (2) the total amount collected for each weekly pool;
and (3) the total amount paid out from each weekly pool.  Again, however, these issues
largely pertain to damages.  *See Williams-Greens v. J. Alexander's Rests., Inc.,* 277
F.R.D. 374, 382 (N.D. Ill. 2011) (with respect to claim that restaurant violated state
wage law by retaining a portion of the tip pool, reasoning that "[w]hile the damages each
proposed class member suffered would vary with the number of hours they worked, the
fact that damages may need to be individually calculated does not defeat
commonality").  Moreover, Defendants otherwise appear to question whether the
conduct Plaintiffs have identified is in fact a violation of the Colorado Wage Laws.
However, in the Court's view, that analysis is better reserved for dispositive briefing.

 In sum, the predominate issue is "the propriety of [Perry's] tip pool," including, as
relevant here, whether Perry's policy or practice of using tip pool funds to satisfy
employees "agreed to wages" contravened the Colorado Wage Laws.  *Id.* at 383.

  (iii) Notice to Customers

 Finally, the Colorado Wage Laws provide that "gratuities are the sole property of
the employee unless the employer notifies each patron in writing, including by a notice

on a menu, table tent, or receipt, that gratuities are shared by employees."  C.R.S. § 8-4-103(6).  Plaintiffs argue that Perry's failed to satisfy this requirement, too.  In support, they direct the Court to the declarations of several Colorado servers appended to their brief stating that "Perry's did not inform customers that the tips that they left were being pooled among the restaurant's employees."  (ECF No. 162 at 4 (citing ECF No. 162-6 at ¶ 16; ECF No. 162-7 at ¶ 16; ECF No. 162-8 at ¶ 16; ECF No. 162-9 at ¶ 16).)  These servers commonly attest that "[t]here was nothing written on the customer checks, table tents, or menus explaining that tips were shared among employees."  (*Id.*)

Defendants argue that class certification on this allegation should nonetheless be denied because it is "an unpleaded claim."  (ECF No. 170 at 18.)  However, it is Defendants' burden to show the validity of its tip pool.  *Allsopp v. Akiyama,* 2010 WL 1258006, at *5 (D. Colo. Mar. 26, 2010) (in FLSA case, noting that the employer "has the burden to demonstrate the propriety of its tip pooling scheme").  Thus, in the FLSA context, courts have concluded that a plaintiff "is only required to plead a violation of the minimum wage provisions," while the burden to prove that the requirements of the tip credit exception. . . . were met rests upon Defendant."  *Pedigo v. Austin Rumba, Inc.,* 722 F. Supp. 2d 714, 724 (W.D. Tex. 2010).

Because Plaintiffs have otherwise shown that the issue of whether the requisite notice of tip sharing was provided to customers is subject to common evidence—*i.e.,* whether notice was ever given to customers that Perry's servers at the Colorado Location shared tips—the Court finds that the predominance element is satisfied.

      b.   *Side Work Subclaim*

Turning next to Plaintiffs' side work subclaim, Plaintiffs allege that Defendants were not eligible to claim the tip credit for the additional reason that they required

Plaintiffs to perform substantial non-tipped "side work" in violation of the Colorado Wage

Laws. (ECF No. 162 at 10; ECF No. 13 at ¶¶ 73–76.)

      INFO #3C explains, in relevant part, that:

> Tip credits can apply to *all* hours of those doing a mix of
> tipped and non-tipped work only under two conditions.
>
> **1) The non-tipped work must "directly support" the
> tipped work.** . . .
>
> **2) The non-tipped work must not take a "substantial"
> amount of time**, which means it must be:
>
>    **a) not more than 20% of the tipped employee's
> weekly hours** — the traditional '80/20 rule'; and
>
>    **b) not more than a half-hour continuously** — because
> doing non-tipped work that long is a departure from
> the tipped job into a non-tipped job.

INFO #3C at 3 (emphasis in original). In contravention of this guidance, Plaintiffs allege

that Defendants claimed the tip credit for all their time worked despite that (1) Plaintiffs

were often required to perform non-tipped work that was *unrelated* to their tipped

occupation (*i.e.,* work that was not "directly supporting"); and (2) Plaintiffs were required

to perform nontipped work which, although *related* to their tipped occupation (*i.e.,*

directly supporting work), regularly exceeded 20% of their time during a given

workweek. (ECF No. 13 at ¶¶ 73-76.)

      Plaintiffs argue it is a common question whether Perry's "side work" policy at the

Colorado Location complies with the Colorado Wage Laws. Specifically, they note the

opening and closing side work duties that Plaintiffs were required to perform are

"described in standard documents and checklists that were used at the Colorado

[L]ocation." (ECF No. 162 at 15 (citing ECF No. 162-16 (Server Checklists)).)

Moreover, Plaintiffs have submitted declarations supporting that they were routinely

required to "spend a large amount of their work time performing non-tipped 'side work'
at the beginning ('opening side work') and ending ('closing side work') of each shift, as
well as continuous side work duties during their shift."  (ECF No. 162 at 5 (citing ECF
No. 162-6 through ECF No. 162-9 (stating, for example, that "[s]ervers easily spent
more than 20% of our scheduled shift time—and regularly spent 30-40% of our shift
time—each workweek performing nontipped side work duties")).)

However, Defendants argue that the side work claim is not susceptible to class
adjudication because there will inevitably be variations as to, for example, the specific
side work tasks each server was assigned from day-to-day or week-to-week, how long it
took servers to complete side work tasks, and whether such tasks were categorically
"related" or "unrelated" to the server occupation.  (ECF No. 170 at 20.)  But "the Court . .
. reject[s] Defendants' arguments that individualized shift lengths, changing
responsibilities, and the speed at which any one server performed his duties preclude
certification."  *Berger v. Perry's Steakhouse of Ill., LLC,* 2020 WL 5848374, at *5 (N.D.
Ill. Oct. 1, 2020).  "[T]he common threshold question [is] whether Defendants' sidework
policy was legal."  *Id.*  The Court finds that this question predominates over any of the
individualized damages determinations raised by Defendants.

Thus, the Court finds common issues predominate over individualized ones with
respect to Plaintiffs' side work subclaim.

        c.     *Uniform/Equipment Subclaim*

Plaintiffs' uniform/equipment subclaim asserts that Defendants unlawfully
"deduct[ed] amounts from class members' pay for uniforms and equipment, depriving
class members of the full minimum wage (and taking a larger tip credit than what is
permitted under Colorado law)."  (ECF No. 164 at 10; ECF No. 186 at 7.)

Pursuant to the COMPS Order, "[w]here wearing a particular uniform or special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel," subject to certain exceptions for the continued maintenance and cleaning of uniforms where they are "plain and washable."  COMPS Order #38, 7 CCR 1103-1, at Rule 6.3.1.  Moreover, neither shall "[t]he cost of ordinary wear and tear of a uniform or special apparel . . . be deducted from an employee's wages."  *Id.* at Rule 6.3.2. [3]

Both parties refer to the argument and evidence contained in their briefing on Defendants' Motion to Decertify to support their respective positions as to whether this claim satisfies commonality and predominance.  (ECF No. 170 at 22; ECF No. 186 at 7 n.2).  The Court will adopt the same approach and concludes, for the same reasons it found that Plaintiffs were similarly situated as to their uniform/equipment subclaim arising under the FLSA, that common questions predominate Plaintiffs' uniform/equipment subclaim arising under state law.  (ECF No. 205 at 14-16); *see also Pliego v. Los Arcos Mexican Rests., Inc.,* 313 F.R.D. 117, 126 (D. Colo. 2016) (finding commonality satisfied where "unlawful uniform charges" was a question of law common to all members of the class).

Separately, Defendants also argue that the Court should not certify Plaintiffs' uniform/equipment claim pursuant to state law because Khalid did not assert the claim in the Amended Complaint.  (ECF No. 170 at 21.)  While not explicitly asserting it as a

---

[3] While neither party has raised the issue, the Court questions whether there is a legal basis for Plaintiffs' state law claim to the extent it is premised on their incurring costs for "tools and equipment" *other than* their required uniforms.  The Court invites further briefing on that issue in the parties' forthcoming dispositive motions filings.

Colorado Wage Law violation, the Courts observes that Khalid minimally identified the

relevant underlying conduct in the Amended Complaint in asserting that Defendants

required *all* Plaintiffs to "pay for various business expenses" at least in violation of the

FLSA.  (ECF No. 13 at ¶ 50.)  In the Court's view, this was sufficient to place

Defendants on notice of any related state law violation predicated on the same conduct.

(ECF No. 13 at ¶ 50.)

        d.    *Meal Break and Rest Period Subclaim*

       Finally, Plaintiffs' "meal break and rest period subclaim" alleges that Defendants

"fail[ed] to provide mandatory meal and rest breaks without additional compensation,"

thereby "depriving class members of the full minimum wage (and taking a larger tip

credit than what is permitted under Colorado law)."  (ECF No. 162 at 10; *see also* ECF

No. 13 at ¶¶ 77–79.)

       Pursuant to the COMPS Order, employees are "entitled to an uninterrupted and

duty-free meal period of at least a 30-minute duration when the shift exceeds 5

consecutive hours."  COMPS Order #38, 7 CCR 1103-1, at Rule 5.1.  Moreover, "[e]very

employer shall authorize and permit a compensated 10-minute rest period for each 4

hours of work."  *Id.* at 5.3.  These mandatory meal breaks and rest periods constitute

compensable time worked.  *Id.* at 5.1 ("Employees shall be permitted to fully consume a

meal of choice on the job and be fully compensated for the on-duty meal period without

any loss of time or compensation."); *id.* at Rule 5.2.3 ("Required rest periods are time

worked for the purposes of calculating minimum wage . . . .").  As a result, if "the nature

of the business activity or other circumstances make an uninterrupted meal period

impractical, the employee shall be permitted to consume an on-duty meal while

performing duties."  *Id.* at 5.1.  Further still, "when an employee is not authorized and

permitted a required 10-minute rest period, his or her shift is effectively extended 10 minutes without compensation."  *Id.* at 5.2.4.  Thus, "a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required . . . rate of pay."  *Id.*

Here, Plaintiffs allege they were prohibited from taking meal and rest breaks during their shift.  (ECF No. 162 at 6.)  They attach declarations from several servers who worked at the Colorado Location, in which all state they were not allowed to take breaks and were not compensated for any missed meal or rest periods.  (ECF No. 162-4 at ¶ 21; ECF No. 162-5 at ¶ 21; ECF No. 162-6 at ¶ 15; ECF No. 162-7 at ¶ 11; ECF No. 162-8 at ¶ 11; ECF No. 162-9 at ¶¶ 11–12.)  They additionally point to the "Employee Handbook" for "Perry's Steakhouse of Colorado, LLC," which states in relevant part: "Perry's Restaurant does not provide a break or meal period to any employees.  Furthermore, employees are not allowed to bring any food or drink into the restaurant."  (ECF No. 186-2 at 36.)

Defendants, however, point to other portions of the Employee Handbook which *do* suggest that employees were entitled to meal and rest breaks.  (*See id.* at 14 ("The immediate supervisor will inform employees of any scheduled break and/or lunch periods.  All Employees scheduled to work five (5) consecutive hours or more are entitled to an unpaid meal period of thirty (30) minutes.  A paid ten (10) minute rest period is also permitted for each four (4) hour work period."), *and* ECF No. 162-25 at 4–5 ("State-Specific Handbook Supplement – Colorado" summarizing Colorado Wage Law requirements for meal and rest break periods).))  Defendants thus argue that a class should not be certified as to the meal and rest breaks subclaim because, to the extent

servers did not take any break to which they were legally entitled, it was not because of
any policy promulgated by Perry's but "because [the servers] [we]re motivated to
receive tips from the guests at their tables."  (ECF No. 170-5 at ¶ 6; *see also id.* at ¶¶ 3–
5 (Perry's manager attesting he never refused servers a break but instead advised them
they "must ask a neighboring server to cover the tables of the guests")).)  Defendants
direct the Court to applicable guidance issued by the CDLE, which states that, while
employers "must authorize and permit their employees to take all required rest periods,"
"[t]his **does not** mean that employees must actually **have** a rest period, if they choose
to keep working."  INFO #4: Meal and Rest Periods, at 2 (last updated May 23, 2022)
(emphasis in original).

        In support, Defendants cite a case from this District denying a plaintiff's motion
for class certification on her meal breaks and rest periods claim where the district court
identified the relevant liability question as "whether U.S. Bank's policy of permitting
employees to take rest-breaks, but not requiring employees to take them, violates
Colorado law."  *Ruiz v. U.S. Bank Nat'l Assn.,* 2020 WL 5517113, at *3 (D. Colo. July
24, 2020).  The district court reasoned the inquiry into whether "employees missed rest
breaks" in violation of the Colorado Wage Laws necessarily "require[d] an employee-by-
employee analysis to determine liability," particularly in view of the plaintiff's own survey
evidence showing some respondents received breaks 90% of the time, some 50%, and
still others never received a rest break.  *Id.*

        In this case, Plaintiffs have at times made allegations reminiscent of the
troublesome "absence of policy" with which the district court took issue in *Ruiz.*  (*See,
e.g.,* ECF No. 162 at 7 ("Perry's did not have any policy to confirm with servers that they

took their meal or rest breaks during a given shift; . . . .").)  However, Plaintiffs have also maintained that, as a class, they were *prohibited* from taking meal and rest breaks full stop.  *Cf. Ruiz,* 2020 WL 5517113, at *3 ("If it were the case that U.S. Bank had a policy *prohibiting* its Colorado employees from taking breaks, . . . the predominance inquiry might weigh in favor of certification depending on whether a common method of proof was availabl[e] to discern damages.").  It may indeed be the case that Defendants can later adduce evidence to refute Plaintiffs' global contention that they were never permitted to take legally-mandated breaks.  However, the Court declines to weigh that evidence at this point.  *Torres-Vallejo,* 220 F. Supp. 3d at 1083 (quoting *Shook,* 386 F.3d at 971) ("The Court does not pass on the merits of the case or resolve contested factual disputes in ruling [on] a motion for class certification, but 'accept[s] the substantive allegations of the complaint as true.'")

At this juncture, the Court concludes that Plaintiffs have adequately shown that they were, on the whole, prohibited from taking legally-mandated breaks and were not compensated for any missed breaks.  Based on the evidence currently before the Court, it finds that this common question predominates Plaintiffs' meal break and rest periods subclaim.  *Cf. Sobolewski v. Boselli & Sons, LLC,* 2017 WL 6945045, at *3 (D. Colo. Nov. 17, 2017) (finding predominance satisfied with respect to plaintiffs' claim asserting violations of the Colorado Wage Laws' meal and rest break provisions), *report and recommendation adopted,* 2018 WL 3838140 (D. Colo. June 13, 2018).

## B.    Undisputed Requisites

As noted above, Defendants do not specifically challenge the remaining requisites for Rule 23 certification.  Still, "the district court has an independent obligation to conduct a 'rigorous analysis' before concluding that Rule 23's requirements have

been satisfied.'"  *Roderick,* 725 F.3d at 1217 (quoting *Wal-Mart Stores,* 564 U.S. at

351).  Accordingly, the Court briefly addresses each undisputed element below.

### 1.    Numerosity

Numerosity is satisfied where the proposed class is "so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs assert numerosity is

satisfied here because, based on "the class list Defendants produced and other

documents, . . . there are at least 130 putative class members."  (ECF No. 152 at 12-

13.)  The Court agrees that numerosity is easily satisfied here.  *Cf. Torres-Vallejo v.*

*Creativexteriors, Inc.,* 220 F. Supp. 3d 1074, 1081 (D. Colo. 2016) (finding allegation of

approximately 140 class members satisfies the numerosity requirement).

### 2.    Typicality

"Rule 23(a)(3) requires that the claims or defenses of the class representatives

be typical of those of the class which they seek to represent."  *Decoteau v. Raemisch,*

304 F.R.D. 683, 689 (D. Colo. 2014).  "The positions of the class representatives need

not be identical to those of the other class members, so long as there is a sufficient

nexus between the claims of the class representatives and the common questions of

law or fact which unite the class.'"  *Id.*  Rather, "[t]he relevant inquiry is 'whether under

the particular circumstances maintenance of a class action is economical and whether

the named plaintiff's claim and the class claims are so interrelated that the interests of

the class members will be fairly and adequately protected in their absence.'"  *Torres-*

*Vallejo,* 220 F. Supp. 3d at 1082 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147,

157 n.13 (1982)).

Here, Plaintiffs assert typicality is satisfied because "the theory supporting

Plaintiffs' and the class members' legal claims are identical."  (ECF No. 162 at 17 (citing

*Sobolewski,* 2017 WL 6945045, at *4 (typicality satisfied where "Plaintiff's theory with respect to his personal state law claims is identical to that of the other potential class members[]").)  The Court agrees that, at least because "the claims of the class representative and class members are based on the same legal or remedial theory" in this case, *Adamson,* 855 F.2d at 676, typicality is satisfied.

### 3.    Adequacy

Rule 23(a)(4) requires that representative parties "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The criteria for assessing whether the lead plaintiffs will adequately represent the class include whether they have common interests with the members of the potential class and whether they will vigorously prosecute the interests of the class through qualified counsel."  *Neiberger v. Hawkins,* 208 F.R.D. 301, 316 (D. Colo. 2002).

Plaintiffs assert that Khalid is an adequate representative for the Colorado Class because he "entirely shares the same interest with all putative class members"— namely, "establishing the illegality of Defendants' policies and practices concerning [] tip share, side work, uniforms, and failing to provide meal and rest breaks."  (ECF No. 162 at 17.)

In addition, Plaintiffs assert they are "represented by counsel who are qualified, experienced, and able to 'vigorously prosecute the interests of the class . . . .'"  (ECF No. 162 at 17-18 (quoting *Neiberger,* 208 F.R.D. 301, 316).)  Plaintiffs' class counsel at "Herrmann Law, PLLC and Lichten & Liss-Riordan, P.C. have substantial experience litigating wage and hour cases[]' in federal court across the country and extensive experience [with] class action litigation."  (ECF No. 162 at 18 (quoting *Montgomery v. Cont'l Intermodal Grp. Trucking LLC,* 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021).))

Moreover, Plaintiffs point out that the experience of their counsel at Herrmann Law includes "extensive experience representing plaintiffs in wage and hour litigation against the same Defendants."  (ECF No. 162 at 18 (citing *Paschal,* 2023 WL 2784864, at *1 (W.D. Tex. Apr. 4, 2023).)  Plaintiffs represent that "[a]ll counsel have dedicated significant time and resources to advancing this litigation, and all are adequate class counsel who can vigorously litigation on behalf of the class."  (ECF No. 162 at 18.)

The Court agrees with Plaintiffs, and Defendants have again given the Court no reason to believe that Khalid or his class counsel would be inadequate to represent the class.

### 4.    Superiority

Finally, Rule 23(b)(3)'s "superiority" requirement is met where class treatment would ensure "efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications."  *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 479 (E.D.N.Y. 2001). [sentence].  Based on the Court's findings that common questions predominate each of the Colorado Wage Law claims asserted by Plaintiffs in this litigation, the Court concludes that class treatment is the most efficient mechanism to resolve Plaintiffs' claims.  *Cf. Berger,* 2018 WL 1252106, at *4 ("the clear predominance of the question of the legality of Defendants' tip retention policy makes class treatment of this question the superior method of adjudication.").

### C.    Scope of Plaintiffs' Tip Pool Subclaim Under the FLSA vs. State Law

Before concluding, the Court takes the opportunity to explain why it has narrowed the scope of Plaintiffs' tip pool subclaim arising under the FLSA (*see* ECF No. 205), while it is granting Plaintiffs' motion for certification of their tip pool subclaim arising

under the Colorado Wage Laws in full.

First, in the motion to decertify, Defendants challenged Plaintiffs' allegation that, although funds from the tip pool were "earmarked" for server assistants, Perry's paid server assistants a flat hourly wage irrespective of how much the servers earned in tips. (ECF No. 160 at 14.) As Defendants argued, the implication was that Perry's did not fully redistribute all the tips, which would constitute an FLSA violation insofar as Perry's was unlawfully retaining tips earned by servers. (*Id.*); *see* 29 U.S.C. § 203(m)(2)(B). In their response, however, Plaintiffs did not even argue that Perry's was unlawfully retaining tips, much less direct the Court to any evidence supporting that Perry's unlawfully retained tips earned by servers working at its North Carolina, Alabama, Florida, and/or Colorado restaurant locations. (*See generally* ECF No. 171 at 4-8.) Thus, the Court concluded Plaintiffs had abandoned any claim that Perry's unlawfully retained tips—whether by using tips to pay direct wages or otherwise—in violation of the FLSA. (ECF No. 205 at 9-10).

By contrast, as discussed above, Plaintiffs argued in their Rule 23 motion for class certification that Defendants' use of tip pool funds to pay employees' direct wages is an independent violation of guidance promulgated by the CDLE expressly providing that an employer may not use tips to "pay employees' direct wages." (*See* ECF No. 162 at 8 (citing INFO #3C).) Accordingly, given that Plaintiffs have made a sufficient showing of predominance as to that violation as discussed above, the Court concludes the so-called "Flat Hourly Wage" allegation should proceed as a violation of the Colorado Wage Laws, even if not as a violation of the FLSA.

Second, in the motion to decertify, Defendants independently challenged

Plaintiffs' allegation that tip pool funds were distributed to "vacant" or "unstaffed" positions.  (ECF No. 160 at 13.)  In their response, Plaintiffs cursorily noted that tip pool funds were distributed to "absent/off hour" employees, but they did not direct the Court to any evidence of a common policy or practice of this occurring across Perry's restaurant locations in Alabama, North Carolina, Colorado, and Florida.  (ECF No. 171 at 6.)  In the absence of same, the Court concluded Plaintiffs failed to meet their burden to show they were similarly situated to proceed on that claim as a collective.  (*See* ECF No. 205 at 10-11.)

In the parties' briefing on Plaintiffs' motion to certify, however, the distribution of tip pool funds to "vacant" positions is merely a subsidiary point to the larger issue that tip pool funds were distributed to employees who do not "customarily and regularly receive tips."  (ECF No. 162 at 4 ("The tip pool was distributed to various positions, including bartenders, service well employees, hosts, food runners, and bussers. However, this occurred even on shifts when there were no 'busser' or 'food runner' working.").)  And whereas Plaintiffs did not direct the Court to any evidence that tips were distributed to bussers and food runners even when they had not worked a related shift in their briefing on Defendants' motion to decertify, Plaintiffs have minimally cited two declarations from Colorado servers in their briefing on the motion to certify to support this at least occurred at the Colorado Location.  (*Id.*)  In any case, Defendants did not specifically challenge Plaintiffs' allegation that tip pool funds were distributed to vacant or unstaffed positions in their response to the motion to certify.  Accordingly, the Court does not make a separate ruling on that issue in this Order.

These differences compelled what might otherwise appear to be an inconsistent

result as to the scope of the FLSA Collective's tip pool claim and the Proposed

Colorado Class's tip pool claim.

## III. CONCLUSION

For all the reasons set forth above, the Court ORDERS that Plaintiffs' Opposed

Motion for Class Certification Pursuant to Rule 23 (ECF No. 162) is GRANTED.  The

Court certifies a Coloardo Class with the following definition:

> All of Defendants' current and former employees who
> worked as servers in at least one week in Colorado within
> the three years preceding the filing of this lawsuit and who
> were paid a subminimum hourly wage pursuant to Colorado
> Wage Law.

Dated this 18th day of December, 2024.

BY THE COURT:

William J. Martinez
Senior United States District Judge